OPINION OF THE COURT
Meyer, J.
 Although plaintiff, 423 South Salina Street, Inc., lacked standing necessary to enjoin the City of Syracuse *480 (City), from transferring real property taken by the City for nonpayment of taxes, it has standing to maintain an action pursuant to the Federal Civil Rights Act of 1871 (42 USC § 1983) for damages resulting from the City’s alleged misuse of its taxing power. Moreover, its complaint states a cause of action under that section which, being governed as to limitations by CPLR 214 (5), was timely brought. The action is, however, barred by plaintiff’s failure to serve a notice of claim as required by General Municipal Law § 50-i, which failure likewise barred any claim based upon violation of the New York State Constitution. The order of the Appellate Division should, therefore, be affirmed, with costs.
I
In September 1976, plaintiff purchased from the University of Rochester (University), property which the University had leased to the W. T. Grant Company in 1944. Grant constructed a five-story building on the property which it then sold to and leased back from the University. The lease required Grant to pay an annual rent of $77,322.32 and all taxes, utility charges, insurance and maintenance costs.
The City assessed the property for each year since 1964 at $1,135,700. Assessment review proceedings for the years 1971-1976 were begun, but Grant’s tenancy ended in 1976 when it went bankrupt and vacated the premises.
The University then sold the property to plaintiff for $25,000, plaintiff agreeing to assume liability for the unpaid 1976 taxes, penalties and interest on the property, which brought the total consideration to $175,774.32. Plaintiff, however, neither paid those taxes, nor the taxes for ensuing years 1977-1979, nor when tax sales were conducted for the 1976-1978 arrearages did it seek to redeem the property within a year after the sale as permitted by Real Property Tax Law § 1010. On April 9, 1979, the City of Syracuse took a tax deed to the property, but in the following month plaintiff obtained a preliminary injunction restraining the City from transferring title to the property until completion of the 1976-1979 assessment review proceeding.
That proceeding ended on April 9, 1981 with our affirmance of the Appellate Division’s modification of the property assessments for the years 1971-1976, in an opinion which noted the "aggravated pattern of misuse of the taxing power” by the City (Grant Co. v Srogi, 52 NY2d 496, 518). The order affirm *481 ing the grant of the preliminary injunction was, however, reversed. The opinion held that there is equitable power to enjoin collection of a tax when there is a clear showing of intentional overassessment tantamount to fraud and the taxpayer was without relief from the imminent deprivation of his property. It concluded, however, that while Grant may have been entitled to such an injunction, plaintiff, by reason of its failure to pay the 1976-1979 taxes, lacked "equitable standing to assert the aggravated pattern of tax abuse to which its predecessor in interest was subject as the basis for injunctive relief’ (52 NY2d, at p 518).
On April 2, 1982 plaintiff commenced a section 1983 action in Federal court as to which a lis pendens was recorded. That action was, however, dismissed on grounds of comity (566 F Supp 484) and that dismissal was affirmed by the Second Circuit (724 F2d 26) on December 14, 1983. Plaintiff then commenced the present action on an essentially identical complaint, well within the six-month period allowed by CPLR 205 (a) (Gross v Newburger Loeb & Co., 85 AD2d 709; 1 Weinstein-Korn-Miller, NY Civ Prac j[ 205.09) and promptly thereafter recorded a lis pendens as to it. On November 22, 1983 the City conveyed the property to defendant Metropolitan Development Foundation and on December 19, 1983 the Foundation conveyed the property to defendant Amlea (New York), Inc.
All three defendants moved to dismiss the complaint, the City upon the grounds that the plaintiff lacked standing, that the complaint failed to state a cause of action and that the action was barred by plaintiff’s failure to serve a notice of claim within the applicable Statute of Limitations; defendants Metropolitan and Amlea on the grounds that the complaint stated no cause of action against them and that any action was barred by limitations. Special Term dismissed the complaint holding the action barred as to the City by plaintiff’s failure to comply with the notice of claim provisions of the City Charter and by the one-year 90-day limitation provision of General Municipal Law § 50-i (1) (c), and as to defendants Foundation and Amlea that no cause of action was stated against them. On appeal to the Appellate Division that court affirmed, concluding, in light of our prior holding in Grant Co. v Srogi (52 NY2d, at p 518, supra), that plaintiff "was not the one subjected to this unlawful conduct”, that the City had not violated plaintiff’s civil rights and that, therefore, the complaint failed to state a cause of action (112 AD2d 745). Plain *482 tiff’s appeal to this court was dismissed on the ground that no substantial constitutional question was directly involved (66 NY2d 914), but its motion for leave to appeal, thereafter made, was granted (67 NY2d 605).
Before us plaintiff argues that it has standing to maintain the action, that the complaint states a cause of action, that the applicable Statute of Limitations is three years, that the notice of claim provision is inapplicable but in any event was substantially complied with, and that the courts below abused their discretion in failing to grant it leave to replead its State constitutional claims. We conclude that plaintiff has standing to seek damages from the City, but not against the Foundation and Amlea, that the complaint states a cause of action to which the three-year statute applies, but that both the present action and any action that could be pleaded under the State Constitution are barred by plaintiff’s failure to give the required notice of claim.[1] We, therefore, affirm.
II
The Appellate Division erred in extending our holding in Grant Co. v Srogi (supra) beyond the facts on which it was based (see, Preston Corp. v Fabrication Enters., 68 NY2d 397 [decided herewith]). As the language quoted above from the Grant opinion makes clear, we held only that plaintiff "lacks equitable standing to assert the aggravated pattern of tax abuse to which its predecessor in interest was subject as the basis for injunctive relief.” But as the discussion preceding that conclusion evidences, the factual basis of the claimed abuse of the taxing power set forth in the papers before the court was "quite compelling” (52 NY2d, at p 517) and might have been sufficient to justify restraining the City from transferring the Grant property, notwithstanding that restraints on enforcement of revenue collection are, and must be if government is to continue to function, the exception rather than the rule. Grant of the injunction was reversed not alone because plaintiff’s predecessor, rather than plaintiff, had been "subjected to this unlawful conduct” (52 NY2d, at p 518), but also because plaintiff, having purchased the property with the understanding that it would assume all tax liability then *483 owing, had never paid the taxes. Thus, it was not a lack of likelihood of success on the merits, but a balancing of the equities, which favored the City rather than plaintiff, that was the basis for the conclusion that plaintiff was without standing to obtain equitable relief.
It was not, however, a holding that plaintiff had no standing to sue for damages or had not sufficiently stated a cause of action for damages. Notwithstanding CPLR 103 (a) and its predecessor provisions, "the distinctions between law and equity * * * are still very much with us” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 103, p 14). A section 1983 plaintiff who, because he has not demonstrated irreparable injury is not entitled to injunctive relief, is not thereby barred from recovery of damages in the action (City of Los Angeles v Lyons, 461 US 95, 111-113). Likewise, as a matter of State procedure we have long recognized that " 'a court of equity * * * may order a sum of money to be paid to the plaintiff and give him a personal judgment therefor when that form of relief becomes necessary in order to prevent a failure of justice and when it is for any reason impracticable to grant the specific relief demanded’ ” (Doyle v Allstate Ins. Co., 1 NY2d 439, 443; Ungewitter v Toch, 26 NY2d 687, affg 31 AD2d 583; Kaminsky v Kahn, 23 AD2d 231, 237).
Thus, plaintiff has standing to maintain its cause of action for damages. It does not, however, have standing to obtain equitable relief in the form of vacatur of the deed taken by the City, of the City’s deed to the Foundation and of the Foundation’s deed to Amlea. We need not consider whether the public policy upon which the lis pendens provisions of CPLR 6501 is based is overborne by the policy discussed in Grant Co. v Srogi (supra) against impeding the right of the municipality to collect revenues, or the res judicata effect of our reversal of the preliminary injunction granted in the prior assessment review proceeding (cf. Preston Corp. v Fabrication Enters., supra), for plaintiff has offered no explanation for its failure to pay the taxes found due in that prior proceeding. Its failure to pay those taxes was at least in part a predicate for the 1979 tax deed. Moreover, plaintiff has made no offer in this proceeding to pay taxes due on the property for any of the open years, notwithstanding the long-standing rule that it is a condition precedent to a plaintiff’s obtaining equitable relief that the plaintiff himself do equity (Duggan v Platz, 263 NY 505, 507).
*484 Because plaintiff is without standing to seek vacatur of the deed, dismissal of so much of the complaint as sought that relief was proper, and, defendants Foundation and Amlea having been joined as defendants only with respect to that relief, dismissal of the complaint as to them was also correct.
Ill
There remains for discussion whether plaintiff’s cause of action against the City for damages is sufficient and, if so, whether it is barred either by limitations or by the failure to file a notice of claim. We conclude that a cause of action is stated and that the action was timely brought, but that the failure to file a notice of claim is fatal to the action.
A
The City’s insistence that no cause of action is stated is predicated on its contentions that plaintiff seeks to recover for injury to others, that the exercise of the taxing power cannot constitute a taking, and that plaintiff has an adequate State remedy. As to the first, plaintiff responds that it acquired from the University not only the property but all of the University’s rights incident thereto, including its interest in pending tax proceedings. While plaintiff may be able to prove at trial that it in fact succeeded to the University’s rights with respect to constitutional violations antedating September 1976, nothing in the record establishes its acquisition of more than the property itself. That does not conclude the matter, however, for plaintiff was directly involved as the taxpayer as to the 1976-1980 assessments, during which period the pattern of overassessment in each year, notwithstanding prior decisions reducing by some two-thirds the prior assessments imposed, continued, culminating in the City’s deeding the property to itself in 1979.
Thus the gravamen of plaintiff’s complaint is not just that the taxes imposed were excessive but that it has been the victim of "an aggravated pattern of misuse of the taxing power,” begun against its predecessor and continued as to it, which sought to require it to pay excessive taxes on the property involved despite rulings that prior assessments "were unlawful by reason of overvaluation” (52 NY2d, at p 518). That such an abuse of the taxing power may constitute a denial of due process was declared long ago by this court *485 (Gordon v Cornes, 47 NY 608, 612). And that the facts alleged in the complaint sufficiently describe an abuse tantamount to constitutional violation appears from the description of the "pattern of misuse”, which operated against the University prior to 1976 and continued after plaintiffs acquisition of the property in 1976 to operate against it, set forth in the Appellate Division’s Grant opinion (71 AD2d 457, 474): "It is not difficult to sort out the considerations at work here. The city’s constitutional debt limit and the amount of important financial aid it receives are computed by the total assessed value of the real property in the city. An important segment of any municipal assessment roll is the commercial properties of its downtown shopping area. These properties not only contribute high values to the assessment roll, but downtown property owners represent a relatively innocuous part of the city constituency. Thus, there is much to win and little to risk by keeping downtown assessments high.” Although plaintiff did not pay the taxes for 1976 and thereafter, its complaint alleges that it was unable to do so because "all potential lessees and purchasers ultimately refused to rent or buy because of the onerous and unlawfully excessive taxes.” A section 1983 cause of action for damages resulting from the City’s alleged violation of plaintiffs constitutional rights is sufficiently stated.
Moreover, the fact that plaintiff may have a State remedy in inverse condemnation (see, Matter of Keystone Assoc. v Moerdler, 19 NY2d 78; Ferguson v Village of Hamburg, 272 NY 234; Gordon v Cornes, supra) does not require dismissal of its section 1983 cause of action. The Supreme Court "has not interpreted § 1983 to require a litigant to pursue state judicial remedies prior to commencing an action under this section” (Board of Regents v Tomanio, 446 US 478, 491). The City’s argument to the contrary is predicated upon cases such as Hudson v Palmer (468 US 517) and Collier v City of Springdale (733 F2d 1311, cert denied 469 US 857) considering whether, in light of Parratt v Taylor (451 US 527),[2] a due process violation could be found to exist if the State provides a meaningful postdeprivation remedy. But, as the Sixth Circuit held in Wilkerson v Johnson (699 F2d 325, 329), to apply Parratt outside the prisoners’ rights context is inconsistent with Supreme Court decisions, beginning with Monroe v Pape *486 (365 US 167),[3] holding that a section 1983 plaintiff is not barred by the availability of a State court remedy. In any event, Hudson and Parratt were concerned with whether there had been a due process violation when a postdeprivation hearing had been provided, not whether, as is here alleged, a municipality may, having provided due process for the determination of a tax assessment, obtain for itself a taxpayer’s property by repeatedly and for an impermissible purpose refusing to abide by the assessment determination, with the result that the property can neither be rented nor sold and is eventually taken by the City for nonpayment of the excessive taxes thus imposed. The due process violation for which plaintiff seeks recompense is, thus, not related to determination of the tax assessment, but to the City’s refusal to abide by the determination made in plaintiff’s favor. In that context, "the remedy provided in § 1983 [is] independently enforceable whether or not it duplicates a parallel state remedy” (Wilson v Garcia, 471 US 261, 279).
B
The present action, having been commenced within six months after the Second Circuit’s affirmance of the dismissal of the prior Federal action, is timely if that action was timely brought (CPLR 205 [a]; Wooster v Forty-Second St. & Grand St. Ferry R. R. Co., 71 NY 471; Buchholz v United States Fire Ins. Co., 269 App Div 49, appeal dismissed 294 NY 807). The City rightly contends that after the Supreme Court’s decision in Wilson v Garcia (471 US 261, supra) our holding in Fields v Board of Higher Educ. (63 NY2d 817, affg 94 AD2d 202) that CPLR 214 (2) governing liability created by statute applies to section 1983 actions is no longer good law. We disagree, however, with its argument that the one-year 90-day period established by General Municipal Law § 50-i (1), rather than the three-year period governing actions for damages for personal injuries (CPLR 214 [5]), applies under the Wilson rationale.
Wilson held that uniformity within each State was consistent with the borrowing principle contained in 42 USC § 1988 and that that statute should, therefore, be "construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims” (471 US, at p 275). *487 Although it was argued that the action before it, for personal injuries resulting from an assault by a New Mexico State Police officer, was barred by New Mexico’s two-year statute covering "[ajctions against a governmental entity or a public employee for torts”, the Supreme Court held that the three-year statute applicable generally to actions for injury to the person had been correctly applied. It reasoned that section 1983 conferred a general remedy for injuries to personal rights and rejected the shorter statute applicable to tort actions against public employees because (471 US, at p 279): "we are satisfied that Congress would not have characterized § 1983 as providing a cause of action analogous to state remedies for wrongs committed by public officials. It was the very ineffectiveness of state remedies that led Congress to enact the Civil Rights Acts in the first place. Congress therefore intended that the remedy provided in § 1983 be independently enforceable whether or not it duplicates a parallel state remedy. The characterization of all § 1983 actions as involving claims for personal injuries minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983.” (Footnote and citations omitted.)
That reasoning answers as well the City’s suggestion that the three-year provision of CPLR 214 (5) should not be applied because to do so will, in light of General Municipal Law § 50-e (5), also extend to three years the time to apply for permission to serve a late notice of claim. That the shorter one-year 90-day provision of General Municipal Law § 50-i would limit the permissible extension as to a notice of claim relating to a personal injury claim against a municipality is simply irrelevant under Wilson’s reasoning. If the shorter statute governing public employee torts is not to be applied to bar the action altogether, it should not be applied to bar an application for extension of time to file a notice of claim. The more particularly is this so in light of the factors which General Municipal Law § 50-e (5) requires the court to consider when presented with an extension application.[4]
*488 Finally as to limitations, it is only necessary to note that the culmination of the City’s alleged abuse of the tax assessment process was the transfer by the City to itself of plaintiffs property on April 9, 1979, less than three years before the Federal action was begun. The City argues, in an apparent effort to obtain dismissal of count I of the complaint, that that count excludes the taking of the April 9, 1979 deed as an element. Dismissal would be improper, however, because paragraph 26 of the complaint specifically alleges the taking of the tax deed by the City and attaches a copy of the deed to the complaint. That allegation is realleged as part of count I in paragraph 71 and the allegations of count I are realleged as part of count II. Whether and, if so, to what extent acts of the City antedating April 2, 1979 should be excluded would, were we not dismissing for other reasons, be for the Trial Judge to pass upon at trial, but dismissal of count I on limitations grounds would, at this point, be premature.
C
Dismissal of the complaint is, however, required by reason of plaintiffs failure to file the notice of claim called for by the General Municipal Law or to apply for an extension of time to do so within the three-year limitations period. Plaintiff argues that our decision in Mills v County of Monroe (59 NY2d 307, cert denied 464 US 1018) should be repudiated as a matter of Federal supremacy, that the Syracuse City Charter notice of claim provision is preempted by State law, that the present action is within Mills’ public interest exception, and that it has, in any event, substantially complied with the requirement.
*489 1.
The applicability to a section 1983 action of a State notice of claim provision, involving as it does construction of 42 USC § 1988, is a matter of Federal law, but when, as here, there is neither a decision of the Supreme Court nor uniformity in the decisions of the lower Federal courts, a State court required to interpret a Federal statute is not bound to follow the decision of the Federal courts or precluded from exercising its own judgment (Flanagan v Prudential-Bache Sec., 67 NY2d 500, 506, cert denied — US —, 107 S Ct 402).
In Chardon v Soto (462 US 650, 657) the Supreme Court identified the policies governing whether a local procedural rule should be borrowed as "deterrence, compensation, uniformity, or federalism.” In concluding in Mills that the notice of claim provision of County Law § 52[5] applied to a section 1983 cause of action, we pointed out that such provisions serve an important State interest in that the governmental subdivision is allowed a meaningful opportunity to investigate the claim in a timely manner and thus protect itself against fraudulent claims and that General Municipal Law § 50-e authorizes a court to extend the time to file such a notice to the full limitations period upon a finding that the delay has not caused the municipality substantial prejudice. That authority, we reasoned, and the fact that the statute is not applied to an action to vindicate a public interest give the statute a flexibility such that it could not be said to offend the Federal policy underlying the Civil Rights Act section there involved (42 USC § 1981). Furthermore, the opinion noted, *490 such a provision is not inconsistent with Federal law merely because it may cause the plaintiff to lose (citing Board of Regents v Tomanio, 446 US 478, 488, supra, quoting Robertson v Wegmann, 436 US 584, 593).
The policy considerations favoring application have also been discussed in Cardo v Lakeland Cent. School Dist. (592 F Supp 765) and by the dissenting Judges in Brown v United States, 742 F2d 1498, cert denied 471 US 1073).[6] Cardo, referring to Mills’ State interest reasons, added that the two principal policies embodied in section 1983 were deterrence and compensation and, adopting the reasoning of the Supreme Court in Tomanio, 446 US, at p 488, supra) with respect to the Statute of Limitations there involved, concluded that "[njeither of these policies is significantly affected by the notice of claim requirement, since plaintiffs can readily enforce their claims, thereby recovering compensation and fostering deterrence, simply by filing a timely notice of claim” (592 F Supp, at p 773).
The Brown dissent answered the majority’s contention that Federal law was to be considered deficient only if it did not supply a universally familiar procedural aspect of litigation by pointing to Robertson v Wegmann (436 US 584, supra), in which the court borrowed a State survivorship statute which caused the action to abate, finding no inconsistency in so doing, and to cases applying local rules which preclude tolling of limitations while an independent action is being pursued (Board of Regents v Tomanio, supra) and start the running of limitations anew when a tolling period ends (Chardon v Soto, supra).
More importantly, however, the dissent pointed to the ubiquity of notice of claim provisions and to the facts that they serve many of the same policies as do Statutes of Limitations, that they go to the remedy in the same way that a limitations statute does, that the wide range of services provided by a municipality makes it more likely that it may cause injury *491 without knowing that it has done so, that the notice of claim required to be filed does not require the kind of preparation necessary for litigation and leaves the claimant with an additional two and one-half years to investigate, negotiate, settle or sue. It noted also that none of the four policies identified by the Supreme Court in Chardon v Soto (supra) would be offended by a notice of claim provision: deterrence and compensation for the same reason advanced in Tomanio and Cardo (supra); uniformity because, as Robertson v Wegmann stated (436 US, at p 594, n 11), "reliance on state law obviously means that there will not be nationwide uniformity on these issues”, and federalism because a notice of claim statute ensures freshness of evidence, helps prevent unreasonable claims and promotes justice.
With respect to deterrence, we add that because a municipal official can never know in advance whether an injured party will file a timely notice of claim or be granted leave to file a late notice of claim, the effect of the provision is practically nil (cf. Robertson v Wegmann, 436 US, at p 592, supra). And with respect to the purposes served by a notice provision, we note the not inconsiderable benefit in reducing the burden on courts, both State and Federal, when the notice results in negotiation and settlement of claims rather than litigation.
The considerations against applying a notice of claim provision have been discussed by the Brown majority, and in Williams v Allen (616 F Supp 653) and Burroughs v Holiday Inn (106 F Supp 629, on reh 621 F Supp 351). The reasoning of the Brown majority was that borrowing is to be indulged in only when there is a deficiency in the Federal scheme and not to do so is inconsistent with Federal policy, that the borrowing of State procedural rules has been limited to rules that "clearly establish the point at which a cause of action ends” (742 F2d, at p 1505), that a notice of claim provision has a purpose quite distinct from Statutes of Limitation, tolling provisions and survival rules, that the application of a local procedural rule "that would significantly inhibit the ability to bring federal actions” (742 F2d, at p 1507) was not reasonable, and that the notice of claim provision was a condition precedent to accrual of a right against the municipality and had its roots in sovereign immunity which is antithetical to the Federal scheme. Mills was distinguished by the majority because of "the unusual flexibility of the relevant New York provision; it was subject to waiver by the court if to waive *492 would promote equity or the action would vindicate 'the public interest’ ” (742 F2d, at p 1509, n 6).[7]
Williams, like the Brown majority opinion, reasoned that application of notice of claim provisions would effectively extinguish an important Federal right and found a potential for confusion and inequity in the public interest exception referred to in Mills, which would result in barring an individual claimant who failed to give notice and sued for himself alone rather than in the public interest. And the Burroughs court found no void or deficiency in the Federal statute that made it incomplete without resort to State law, and on reconsideration read Wilson’s refusal to apply the State limitations statute applicable to governmental torts as inconsistent with application of a notice of claim provision.
We are persuaded that application in Federal civil rights actions of the notice of claim requirements of General Municipal Law § 50-i as limited by General Municipal Law § 50-e is proper.[8] Whatever may be the situation with respect to the statutes of other States, it cannot be said that the provisions of section 50-i interpose an added element in the Federal cause of action. The cause of action arises when the conduct involved occurs and will only be barred if the claimant neither gives notice within 90 days, nor within the next two years and nine months seeks an extension of the right to do so. Moreover, such an application for leave to serve a late notice "shall not be denied on the ground that it was made after commencement of an action” (General Municipal Law § 50-e [5]). The provision is, therefore, essentially the same as *493 a Statute of Limitations, balancing the same interests as does such a statute, but adding a notice procedure that is not difficult to comply with (cf. Burnett v Grattan, 468 US 42, 50). More importantly, in view of the opportunity afforded by section 50-e (5) of applying for leave to file a late notice, the failure to file such a notice within the 90-day period prescribed in section 50-e (1) (a) is not necessarily fatal to plaintiffs case. Compliance will, as noted above, have no practical effect on deterrence at all and will affect compensation only as to those who have, as did the present plaintiff, slept on both the right to give the required warning of impending suit to the municipality and the right to obtain leave of court, at any time during the full three-year limitation period, to give notice late. Nor in our view does the public interest exception for State agency enforcement proceedings, or for class action type proceedings normally involving a private Attorney-General type of action, militate against application of section 50-e to an individual claim for damages such as is here involved.
In light of the foregoing analysis and bearing in mind that the Supreme Court has yet to consider the question, we conclude that General Municipal Law § 50-i is applicable to this action.
2.
Plaintiffs contentions that the action is within the public interest exception and that it has substantially complied with section 50-e may be more quickly answered. Union Free School Dist. No. 6 v New York State Human Rights Appeal Bd. (35 NY2d 371, 380) involved enforcement by the State Division of Human Rights of an order made by it acting in the public interest. But as we later made clear in Board of Educ. v New York State Div. of Human Rights (44 NY2d 902, 904), notice of claim provisions do apply to proceedings before the Division when " 'only enforcement of private rights’ ” is sought. Mills stated the scope of the exception as "actions that are brought to protect an important right, which seek relief for a similarly situated class of the public, and whose resolution would directly affect the rights of that class or group” (59 NY2d, at p 311 [emphasis supplied]). As in Mills, so here, although plaintiff avers that the City has engaged in unlawful practices affecting others than plaintiff, the relief sought was limited to enforcement of plaintiffs private rights rather than the vindication of rights of similarly situated downtown property owners as a class.
*494 Nor can plaintiffs application in the tax assessment proceeding for a preliminary injunction or the notice of claim filed under the Eminent Domain Procedure Law constitute substantial compliance with General Municipal Law § 50-e. Neither set forth any claim under the Civil Rights Act (Alaxanian v City of Troy, 69 AD2d 937; see, Davidson v Bronx Mun. Hosp., 64 NY2d 59). The EDPL notice was not filed within the required 90 days after the City took the tax deed, and, as already noted, plaintiff never sought leave to file a late notice as permitted by General Municipal Law § 50-e (5). Nor, no notice of claim having been filed, was there any basis for the exercise by the lower courts of the discretion vested in them by General Municipal Law § 50-e (6).
For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Alexander and Titone concur; Judges Kaye and Hancock, Jr., taking no part.
Order affirmed, with costs.

. Although our notice of claim holding is a sufficient basis for affirmance and we would, therefore, normally find it unnecessary to consider the other grounds, we deem it appropriate to do so in the present case because they are directly raised by the motions to dismiss.

. Overruled on an unrelated issue Daniels v Williams (474 US —, 106 S Ct 662).

. Overruled on an unrelated issue Monell v New York City Dept. of Social Servs. (436 US 658, 663).

. General Municipal Law § 50-e (5) provides that: “Upon application, the court, in its discretion, may extend the time to serve a notice of claim specified in paragraph (a) of subdivision one. The extension shall not exceed the time limited for the commencement of an action by the claimant against the public corporation. In determining whether to grant the extension, the court shall consider, in particular, whether the public corporation or its attorney or its insurance carrier acquired actual knowledge of the essential *488 facts constituting the claim within the time specified in subdivision one or within a reasonable time thereafter. The court shall also consider all other relevant facts and circumstances, including: whether the claimant was an infant, or mentally or physically incapacitated, or died before the time limited for service of the notice of claim; whether the claimant failed to serve a timely notice of claim by reason of his justifiable reliance upon settlement representations made by an authorized representative of the public corporation or its insurance carrier; whether the claimant in serving a notice of claim made an excusable error concerning the identity of the public corporation against which the claim should be asserted; and whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits. An application for leave to serve a late notice shall not be denied on the ground that it was made after commencement of an action against the public corporation.”

. In the present action the City relies upon both Syracuse City Charter § 8-115 (2) and General Municipal Law § 50-i. Plaintiffs argument that the City Charter is a local law is incorrect, the Charter having been adopted by general statute (L 1885, ch 26) and amended to include the notice of claim provision by like statutes (L 1905, ch 682). Plaintiff also contends that General Municipal Law § 50-i (2) makes its provisions applicable rather than the City Charter section. We do not find it necessary to decide whether the Charter’s broader coverage makes it inconsistent with section 50-i, for Wilson v Garcia (471 US 261), having characterized section 1983 actions as involving claims for personal injury, such "constitutional tort” actions (Pauk v Board of Trustees, 654 F2d 856, 866, cert denied 455 US 1000) are within the notice of claim requirements of section 50-i, although for the reasons above stated (at pp 486-487) not within its one-year 90-day limitation period. For like reason such claim as the complaint asserts based on the State Constitution is also barred by reason of the failure to give notice of claim (Phelps Steel v City of Glens Falls, 89 AD2d 652), and we, therefore, need not consider plaintiff’s suggestion that it should have been granted leave to replead to flesh out that claim.

. Brown concerned a "constitutional tort” action brought under Bivens v Six Unknown Fed. Narcotics Agents (403 US 388), section 1983 not having been made applicable to the District of Columbia at the time of the incident involved in Brown (742 F2d 1498, 1500, nn 1, 2). The considerations involved are, however, essentially the same. Indeed, the opinions rely on a number of section 1983 cases. Brown was decided en banc by the Court of Appeals for the District of Columbia Circuit, the court dividing 7 to 4 against application of a District notice of claim provision.

. Fuchilla v Layman (210 NJ Super 574, 510 A2d 281) distinguished Mills on this basis also.

. Cases refusing to apply a notice of claim statute are in the majority, but except for the three above discussed advance no reason, other than precedent, for the conclusion (Rosa v Cantrell, 705 F2d 1208, 1221, cert denied 464 US 821; Brandon v Board of Educ., 635 F2d 971, 973, n 2, cert denied 454 US 1123; May v Enomoto, 633 F2d 164, 167; Doty v Rochester City Police Dept., 625 F Supp 829; Williams v Allen, 616 F Supp 653; Burroughs v Holiday Inn, 606 F Supp 629, on reh 621 F Supp 351; Altaire Bldrs. v Village of Horseheads, 551 F Supp 1066; Glover v City of New York, 401 F Supp 632; Carrasco v Klein, 381 F Supp 782; Láveme v Corning, 316 F Supp 629; Williams v Horvath, 16 Cal 3d 834, 548 P2d 1125; Overman v Klein, 103 Idaho 795, 654 P2d 888; Fuchilla v Layman, 210 NJ Super 574, 510 A2d 281; Doe v Ellis, 103 Wis 2d 581, 309 NW2d 375). Cases applying such a provision to a section 1983 action, in addition to Mills and Cardo discussed above, are Deary v Three Un-named Police Officers (746 F2d 185) and Indiana Dept. of Public Welfare v Clark (478 NE2d 699, cert denied — US —, 106 S Ct 2893).