Simons, J.
(dissenting). I agree with the majority that one appearing before an administrative adjudicatory body is entitled to a fair and impartial hearing. The established New York law requires it as a matter of fundamental fairness. We have held, however, that "a mere allegation of bias will not suffice. There must be a factual demonstration to support the allegation of bias and proof that the outcome flowed from it.” (Matter of Warder v Board of Regents, 53 NY2d 186, 197; see also, Matter of Lowcher v New York City Teachers’ Retirement Sys., 54 NY2d 373; Matter of Grant v Senkowski, 146 AD2d 948, 949-950; Matter of Claffey v Commissioner of Educ., 142 AD2d 845; People v Muka, 72 AD2d 649.) In my view, the petitioner has failed to establish that Commissioner Duffy was biased against it but even it be assumed that he was, the evidence fails to establish that the outcome of the case "flowed from” his bias. Indeed, the majority has not attempted to show that it did. Instead, it has changed the existing rule applying to adjudicatory administrative proceedings by adopting a new rule even broader than that applying to Judges and jurors. It holds that the Due Process Clause of the United States Constitution requires annulment of the order finding petitioner guilty of selling to minors "whether or not [Commissioner Duffy] had actually prejudged the matter” because his statements to the Senate committee gave an impression which lent "an impermissible air of unfairness to the proceeding.” (Majority opn, at 164.) The United States Supreme Court has found no such requirement in the Due Process Clause. On the contrary, it has rejected an expansive application of the clause to administrative adjudicatory proceedings and held that knowledge of evidence to be disputed at administrative hearings is insufficient to require disqualification (see, Withrow v Larkin, 421 US 35, and cases cited, at 47-50)1 While language may be found in some decisions of the Circuit Courts of Appeal seeming to support the majority’s holding that the appearance of impropriety violates due process, the decisions do not stand for that proposition and even if they did they are not binding on this court (see, 423 S. Salina St. v City of Syracuse, 68 NY2d 474, 489; Flanagan v Prudential-Bache Sec., 67 NY2d 500, 506). Finally, as a matter of policy we *167 should not create a constitutional guarantee of such breadth, when the Legislature and the Governor are addressing the subject (see, Senate Bill 3613-A of 1989 and veto message of Governor Cuomo, July 25, 1989; Executive Order No. 131, Dec. 7, 1989 [directing State agencies to formulate specific plans to avoid giving the appearance of unfairness in administrative hearings]; see also, NYSBA Report of Task Force on Administrative Adjudication, July 14, 1988).[1] They are positioned best to formulate procedures to meet concerns arising from the appearance of impropriety in matters before the several agencies and departments of State and local government and the court should not adopt a rule broader than that required by the Supreme Court at a time when they are attempting to do so. Accordingly, I dissent.
I
The Administrative Law Judge hearing the evidence in this case found petitioner guilty of two violations of serving alcoholic beverages to minors and exonerated it on two others. On review, the Authority unanimously sustained the Law Judge’s findings and the Appellate Division subsequently found the Authority’s determination supported by substantial evidence and confirmed it. Thus, absent petitioner’s claim of bias the charges are immune from attack.
It is conceded that decision makers, either in courts or adjudicatory administrative hearings, should be fair and impartial. Not all bias is disqualifying, however; disqualification depends upon the nature of the bias and the affect it may be expected to exert on the outcome of the proceedings. One may have a preconceived view about law or policy, a preconceived view about the facts of a particular case, or partiality or personal prejudice in the sense of an unfair attitude against the parties involved.[2]
Bias based upon a prejudgment of law or policy is, as the majority concede, almost universally held not to be grounds for disqualification. Most administrators, because of their positions and their expertise in the regulatory area in which *168 they work, are expected to be biased in favor of effectuating purposes of the programs they administer and enforcing laws concerning them (see, 3 Davis, Administrative Law § 19:2 [2d ed]). A correctional officer, for example, may not be faulted for entertaining a philosophical bias in favor of institutional security or a probation officer or Parole Board for entertaining a bias in favor of public safety (see, e.g., Cleavinger v Saxner, 474 US 193, 204; Gagnon v Scarpelli, 411 US 778). It is no surprise, therefore, and certainly not grounds for disqualification, that Commissioner Duffy entertained a bias in favor of enforcing the rules and regulations of the State Liquor Authority and the criminal laws proscribing its licensees from selling alcoholic beverages to minors. He can hardly be faulted for telling the committee that he intended to enforce such laws and regulations to the fullest, and to devise more efficient methods for doing so, even as the laws and regulations applied to specific licensees.
But this appeal does not deal with policy. Petitioner asserts there must be a reversal because Commissioner Duffy’s public statements about its case warrant a finding that he had prejudged the factual allegations against it or gave the appearance that he had done so.
There is a presumption that one serving as an administrator or a Judge acts honestly and mere familiarity with the facts of a case obtained in the performance of a statutory duty is not disqualifying (Hortonville Dist. v Hortonville Educ. Assn., 426 US 482, 493; Withrow v Larkin, 421 US 35, 47, supra). In this case, Commissioner Duffy, as Chairman of the Authority, was invested by statute with both executive and quasi-judicial powers and duties requiring him to oversee investigations, present charges and review adjudications once made. He could hardly be expected to be ignorant of petitioner’s case, given his responsibilities. Moreover, the Senate committee insisted he be prepared to discuss it and under the circumstances, no adverse inference can arise from his knowledge of the facts.
The critical question is whether the Commissioner’s prior knowledge prevented him from fairly reviewing the Administrative Law Judge’s findings for, as a person adjudicating a claim of which he had prior knowledge, fundamental fairness required that he be willing to give consideration to evidence that his prejudgment about general facts was unsound. The Commissioner was disqualified only if his knowledge had *169 hardened into a prejudgment of guilt which had become so fixed that he was unable to keep an open mind when reviewing evidence subsequently presented to him (see, 2 Davis, Administrative Law § 12:01, at 146 [1958]). It is clear from an examination of the Commissioner’s statements that he entertained no such fixed, unalterable belief in petitioner’s guilt of the pending charges.
II
In looking at the Commissioner’s testimony, it is important to visualize the setting in which it was given. He was newly appointed and called to testify before a Senate committee vested with budgetary control over his agency and headed by a member of the opposite political party. In the past, the committee had been highly critical of the State Liquor Authority and its former Chairman. Its questions to Commissioner Duffy were far-ranging and aggressive. At the outset, the chairman reminded the Commissioner that the Authority had been described previously as a "disorganized and ineffectual toothless tiger” which was "wasting the taxpayers money” and that this "first” committee meeting with him "was to determine in a highly specific way” what Commissioner Duffy had done to remedy those deficiencies. For that purpose, the committee had supplied the Commissioner in advance with "a copious list of questions”, including questions about 34 pending cases. The committee then proceeded to question the Commissioner about proposed administrative reorganization, the Authority’s sensitivity to political influence and the pressures on the Authority and its licensees from gamblers and organized crime. Finally, the committee chairman turned to questions about the Authority’s failure to police its licensees, noting complaints concerning the extensive number of unlicensed premises operating in New York City and violations of the new 21-year-old drinking law and he asked how the Commissioner intended to enforce these laws. Addressing himself specifically to the court’s dismissal of the criminal charges against petitioner for sales to minors, the chairman asked the Commissioner how he intended to handle the "notorious” problem which had existed at petitioner’s premises both before and following the homicide of one of its patrons. The Commissioner was challenged time and again about reports that petitioner was selling alcoholic beverages to minors and criticized for his failure to punish it. His at *170 tempted explanations were described by the chairman as "preposterous”.
It is apparent from this background that the Commissioner was trying, in the passages quoted in the majority opinion (at 163-164), to explain why criminal court had dismissed the charges against petitioner and what he intended to do to follow up administratively the repeated complaints against it to insure that they reached the adjudication stage. In response to committee pressures for action, the Commissioner stated that although he intended to bring petitioner to justice he could not proceed on "somebody’s conjecture”, he had "to have a record.” When viewed in this context the statements indicate the Commissioner’s intention to pursue the charges but to ensure that they were based upon sufficient evidence. Under the circumstances, I cannot agree with petitioner that because the Commissioner failed to cast his remarks in terms of petitioner’s "alleged” sales to minors we must infer the existence of actual bias preventing him from fairly considering the evidence against it. There is nothing in the transcripts of the Senate hearing or the adjudicatory hearing to indicate that he had a closed mind about the charges against petitioner or that his determination was based upon anything other than a careful review of the evidence presented at the hearing and he swears that it was not. Thus, on this record petitioner has failed to prove that bias existed or that it resulted in denial of a fair hearing.
Ill
Nor was petitioner denied the procedural due process guaranteed by the United States Constitution. Adjudicatory administrative hearings occur in a variety of settings and the degree of formality and protection required in each depends upon the relative interests of the citizen and the government and the risk of error from the procedures used (see, Mathews v Eldridge, 424 US 319, 335; see generally, 2 Rotunda-NowakYoung, Constitutional Law: Substance and Procedure § 17.9). Whatever the formality required, however, the Supreme Court has never held that due process requires the avoidance of an appearance of impropriety in an administrative hearing. Even in criminal cases, matters of disqualification rarely rise to constitutional levels or violate procedural due process, absent some interest of the Judge in the outcome of the proceedings, and administrators who exercise both executive and adjudica *171 tory functions "cannot possibly be under stronger constitutional compulsions * * * than a court.” (Trade Commn. v Cement Inst., 333 US 683, 703.)[3]
Trade Commn. v Cement Inst, (supra) involved a ruling that cement manufacturers had been guilty of unfair market practices. The manufacturers claimed actual bias because prior statements of the Commission expressly condemned multiple basing point pricing, the very practice later found unlawful in proceedings against respondents. The argument there, as here, was that the prehearing statements were so specific that an inference of actual bias affecting the outcome of the proceedings against them was warranted; the appearance, if not the fact, of impropriety was enough. The United States Supreme Court rejected the claim asserting that the prior statements based upon an intensive investigation by the Commission did not prove the Commissioners’ minds were so "irrevocably closed” that they were unable to evaluate the substantial contrary evidence presented by the respondents at the Commission hearing (supra, at 701).
An even more compelling case is National Labor Relations Bd. v Donnelly Co. (330 US 219) which involved charges of unlawful labor practices against an employer. During the hearing, the examiner rejected a substantial item of evidence offered by the employer. The Board confirmed the examiner’s order and found the employer guilty of unfair labor practices but the Court of Appeals reversed. A second hearing was scheduled before the same examiner over the company’s objection that he had prejudged the case because he had previously rejected the disputed evidence as "valueless”. The motion was denied and the hearing proceeded. After reviewing samples of the excluded evidence, the examiner once again rejected it. The Court of Appeals again reversed the NLRB’s order on the ground of "[t]he unfairness of trying issues of fact to those who have prejudged them” (see, 151 F2d 854, 870). On appeal, *172 the Supreme Court reversed. Recognizing that it might have been preferable to appoint a new examiner, the court nevertheless held the examiner was not legally disqualified and the order need not be annulled (330 US, at 236-237). One may argue, as the majority here does, that the prejudgment involved a question of law but the record demonstrates that the Hearing Examiner had a closed mind on the subject and he retained a closed mind — and rejected exonerating evidence— even after an appellate court had held otherwise. As a leading commentator has noted, the decision may be fairly read to stand for the proposition that a Hearing Officer may have an unalterable conviction, even a closed mind, without being disqualified (see, 3 Davis, Administrative Law § 19.2, at 376-377 [2d ed]). Thus, there are neither Supreme Court precedents nor New York decisions which hold that the appearance of impropriety, standing alone, is sufficient to disqualify an adjudicatory administrative official. Even where there is the strong evidence of preexisting bias, unless it appears the bias foreclosed a fair review of the evidence, there is no basis for annulling the adjudicatory administrative decision.
While there are Federal cases in the circuits discussing disqualification based upon the appearance of impropriety, they are not binding on us and are readily distinguishable. All involve egregious conduct and none have found appearances, standing alone, sufficient to vitiate the administrative judgment. Cinderella Career & Finishing Schools v Federal Trade Commn. (425 F2d 583 [DC Cir]),[4] Texaco, Inc. v Federal Trade Commn. (336 F2d 754 [DC Cir]) and Kennecott Copper Corp. v Federal Trade Commn. (467 F2d 67 [DC Cir]) concerned ill-advised speeches by Commissioner Paul Dixon identifying petitioners and, for all practical purposes, announcing their guilt while proceedings were pending. Importantly, however, the Commissioners in the Cinderella case also ignored the testimony considered by the Hearing Examiner and made a de novo determination, reversing the examiner’s decision dismissing the complaint, reinstating it and issuing a cease and desist order against petitioners. In Texaco, the Commission once again reversed the examiner who had dismissed the complaint, but the court agreed with him that the evidence was insufficient. In Kennecott the charges of bias rested on evi *173 dence that while the case was pending there had been several meetings between the Federal Trade Commissioners and Congress during which the subject matter of the pending Kennecott case was discussed and also one Commissioner had given a magazine interview, citing the facts of the Kennecott case as illustrative of problems concerning improper pricing practices. The court affirmed the order of the Commission seeing little merit to the charges in the absence of evidence that the Commissioners had prejudged the facts and the decision had resulted from their bias.
Thus, the cases the majority rely on are factually and legally distinguishable. In Kennecott the court found no due process violation, notwithstanding a Commissioner’s prehearing statements about the case. In both Cinderella and Texaco the Commission had reversed findings of a Hearing Examiner and found violations where the examiner found none and after Commissioner Dixon had given speeches publicly naming the litigants in the two cases, referring to the "evils” they were charged with and all but affirming their guilt before he decided the cases. This case involves none of the irregularities of the Federal cases and there is neither comparable evidence of prehearing bias nor proof that the Authority’s decision was the product of bias. The proceedings were in all respects regular and the Administrative Law Judge’s findings were based upon substantial evidence. The Authority upheld the Law Judge’s findings that petitioner was guilty of two of four charges and the Appellate Division confirmed the sufficiency of the evidence supporting them.
In short, there is no factual basis to reverse this order, no legal requirement that we do so and, as a matter of policy, we should not recognize a broad constitutional rule applying to diverse administrative hearings that due process requires the avoidance of even an appearance of impropriety when it is not required because the specifics of such matters are better left to the other branches of government now addressing them.
Accordingly, I would affirm.
Judges Kaye, Titone and Bellacosa concur with Chief Judge Wachtler; Judge Simons dissents and votes to affirm in a separate opinion in which Judges Alexander and Hancock, Jr., concur.
Judgment reversed, with costs, and petition granted to the *174 extent on annulling the determination of the State Liquor Authority and remitting the matter to Supreme Court, New York County, with directions to remand to the State Liquor Authority for further proceedings in accordance with the opinion herein.

. The Governor’s Executive Order refers to specific prohibited conduct, e.g., ex parte contacts, contact with agency lawyers, promotions or salary increases based on favorable decisions, establishing decision quotas, etc.

. Judiciary Law § 14 and 28 USC § 455 also specify the interest or relationship which will disqualify State and Federal Judges as a matter of law.

. By contrast, a juror, disqualified because possessing "a state of mind that is likely to preclude him from rendering an impartial verdict” (CPL 270.20 [1] [b]) may be qualified, nonetheless, if he or she states unequivocally that the prior state of mind will not influence the verdict, and that he is able to render an impartial verdict solely on the evidence (People v Blyden, 55 NY2d 73, 77-79). A Trial Judge unless proscribed by statute (Judiciary Law § 14) is not disqualified for actual bias and the fact of bias would not, standing alone, invalidate the judgment even if true (see, Matter of Rotwein [Goodman], 291 NY 116, 123). Manifestly, the mere appearance of impropriety, while perhaps grounds for discipline, does not invalidate the judgment.

. In a prior case involving the same petitioner (Federal Trade Commn. v Cinderella Career & Finishing Schools, 404 F2d 1308 [DC Cir]), the court rejected a due process argument based on petitioner’s claim of appearance of impropriety resulting from the Commission’s press releases (id., at 1315).