Herb **BUDDEN**, Bonnie Budden and Christine Muller, Individually, and as Representatives of a class of teachers, Appellants (Plaintiffs below),

v.

The **BOARD OF SCHOOL COMMISSIONERS OF the CITY OF INDIANAPOLIS**, Ash Financial Group, Inc., Shirl Gilbert, Individually, and Brent W. Ash, Individually, Appellees (Defendants below).

No. 49S05–9804–CV–220.

Supreme Court of Indiana.

Aug. 20, 1998.

---

Michael K. Sutherlin, Patricia Orloff Grow, Kevin W. Betz, Indianapolis, for Appellants.

Donald L. Dawson, John B. Drummy, Indianapolis, for Appellees.

## ON PETITION TO TRANSFER

BOEHM, Justice.

The Indiana Tort Claims Act requires a person suing a "political subdivision" of the State in tort to give written notice describing the claim before filing suit. This interlocutory appeal deals with the scope of the notice required under the Act to preserve claims of a prospective class with unnamed members. The trial court concluded that it was bound by a recent Court of Appeals decision and ruled that this case could not proceed as a class action because the unnamed members were not identified in the notice and had not authorized the three putative class representatives, who had given notice, to act on their behalf. The broad question presented is one of first impression in this Court:

> Does a Tort Claims Act notice by a putative class representative that fairly signals an intent to assert a class claim, but does not list all potential plaintiffs, comply with the notice requirement to preserve claims of class members if a class is subsequently certified under Trial Rule 23?

Because we hold that it does, we reverse the grant of partial summary judgment for the defendants on this issue, vacate the order denying class certification, and remand for further proceedings consistent with this opinion.

### Factual and Procedural History

In July 1991, the Board of School Commissioners of Indianapolis ("IPS") entered into a contract with Ash Financial Group, Inc. ("AFG") providing that AFG would administer a retirement plan under which individual

accounts were established for the benefit of IPS employees.[1] Pursuant to the agreement, IPS deducted money from participating employees' paychecks and disbursed the funds to AFG for investment with insurance companies or mutual funds selected by the participants. At some point IPS became aware that AFG might be embezzling the funds, as in fact was occurring. In March 1994, IPS terminated its contract with AFG effective June 30, 1994. In a letter dated September 21, 1994, IPS Interim Superintendent Duncan N.P. Pritchett Jr. informed potentially affected IPS employees of these developments:

> We have reason to believe that [AFG] which administered tax sheltered annuities ("TSA") accounts for approximately 941 IPS employees from July, 1991 through June 30, 1994, failed to distribute approximately $350,000 in funds deducted from employees' salaries to the insurance/annuity companies selected by the employees.

The letter asserted that IPS was trying to determine the number of employees affected and "the total amount of money involved." The letter assured employees that IPS would "continue to explore all means for the recovery of the funds and restitution of the TSA accounts of the affected IPS employees."

Herb Budden, Bonnie Budden, and Christine Muller (collectively "the plaintiffs")—all IPS teachers for many years and participants in the investment plans—eventually retained counsel to consider pursuing claims based on these events. In January 1995, counsel sent a three-page letter to IPS that began as follows:

> This is to advise you that our office has been retained by [the plaintiffs] and potentially all teachers who had 403 funds embezzled by [AFG] to represent their interests in any claims they may have against [IPS] and [AFG]. The purpose of this correspondence is to officially serve you with a Tort Claim Notice....

The letter outlined the facts underlying the claim—IPS's decision to retain AFG, the nature of the agreement, and the apparent theft of the funds. The participating teachers' losses were described as "individually various funds from their pension plan and collectively approximately $400,000.00." A theory of liability was also offered: "Because of the wrongful conduct of [IPS] and its then Superintendent Shirl Gilbert the negligent hiring and supervision of Brent W. Ash and [AFG] contributed to and resulted in the fraudulent and unlawful acts previously described." The letter, which included the plaintiffs' addresses, concluded with the following:

> Herb Budden, Bonnie Budden, and Christine Muller, teachers of the Indianapolis Public School system, and potentially all teachers who had 403 funds embezzled by Ash Financial Group, Inc .... are holding Indianapolis Public School Corp. liable for the loss and seek to recover all such funds plus reasonable attorney fees.... [The plaintiffs] and potentially all teachers who had 403(b) funds embezzled by Ash Financial Group, Inc .... seek a total of $500,000.00 in damages under the Tort Claims Act.

In June 1995, the plaintiffs filed a "class action complaint for damages" against IPS, Shirl Gilbert (IPS Superintendent in July 1991), AFG, and Brent W. Ash, the president of AFG. The plaintiffs purported to act on their own behalf and "as representatives of a class of teachers" who were defrauded by AFG. The complaint alleged several tort causes of action [2] and requested $500,000 in damages under the Tort Claims Act, punitive damages, and reasonable costs including attorney fees. The defendants' answer denied

---

1. Because IPS is a public agency, the plan was established under Internal Revenue Code § 403(b). For purposes of this opinion it is similar to 401(k) plans established by private employers.

2. The claims against IPS may be summarized as follows: (1) negligence in selecting AFG; (2) negligence in failing adequately to supervise and monitor AFG's activities; and (3) breach of fiduciary duty in selecting and retaining AFG. Several causes of action pleaded against Gilbert generally related to breach of duty of care and his alleged misrepresentations to IPS before the contract was made of Ash's competency and the extent of Gilbert's personal ties to Ash. The claims against AFG and Ash focused on recovery of approximately $400,000 in missing employee funds.

the substance of the plaintiffs' allegations and raised a number of affirmative defenses, including inadequacy of the tort claim notice.[3]

Asserting that an estimated 900 or more teachers might have an interest in the proceedings, in November 1995 the plaintiffs moved to certify the case as a class action under Trial Rule 23. The class was described as "all teachers employed by [IPS] who have an interest in the money embezzled, who participated in and were wrongly deprived of their own funds from a mutual funds pension plan under the Indianapolis Public Schools Teachers' Retirement Fund." The defendants opposed class certification. After a hearing on the motion, the trial court ruled that the plaintiffs "have complied with Trial Rule 23. The basic problem with Plaintiffs['] motion is the adequacy of notice under the Indiana Tort Claims Act." Although the court found that in "the present posture of the case, the Plaintiffs are entitled to proceed with the class action," a final ruling on class certification was postponed pending the outcome of a hearing on the defendants' motion for partial summary judgment on the notice issue. In seeking summary judgment on that point, the defendants argued that any claims by unnamed class members were barred because (1) the names and number of potential plaintiffs were not provided in the tort claim notice; and (2) the potential class plaintiffs did not authorize anyone to submit a notice for them. The defendants relied on *Alonso v. City of Hammond*, 648 N.E.2d 1221 (Ind.Ct.App.1995) for the proposition that these flaws were fatal to the notice and prevented the suit from proceeding as a class action. *Alonso* held that "all potential class plaintiffs must satisfy the notice requirement of the Tort Claims Act, either by submitting their own notices of claims or by authorizing someone to submit a notice for them." *Id.* at 1224 (footnote omitted).

In a July 1996 order, the trial court granted the defendants' motion for partial summary judgment, denied the plaintiffs' motion for class certification, and ruled that the case would go forward as a suit by the three named plaintiffs. In so ruling, the court remarked: "Perhaps, the stringent notice requirements as set out in [*Alonso*] should be revisited by the Court of Appeals. However, this Court is bound to follow the ruling of the Court of Appeals." The order was certified for interlocutory appeal pursuant to Indiana Appellate Rule 4(B)(6).[4] The plaintiffs appealed and the Court of Appeals affirmed. *Budden v. Board of Sch. Comm'rs*, 680 N.E.2d 543 (Ind.Ct.App.1997), *reh'g denied.* We granted transfer on April 15, 1998.

## Standard of Review

■ Summary judgment on a claim or issue is appropriate when the evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The nonmoving party has the burden of demonstrating that the grant of summary judgment was error, but we nonetheless carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied its day in court. *Mullin v. Mun. City of South Bend*, 639 N.E.2d 278, 280–81 (Ind.1994). Although a ruling on class certification is typically reviewed for an abuse of discretion, *Hefty v. All Other Members of the Certified Settlement Class*, 680 N.E.2d 843, 848 (Ind.1997), resolution of this appeal turns on interpretation of the notice provisions of the Tort Claims Act. Because this presents a question of law, we review application of the Act's notice requirements to the facts here de novo. *Indiana State Highway Comm'n v. Morris*, 528 N.E.2d 468, 471 (Ind. 1988).

## I. Tort Claim Notice in the Class Action Context

Before a tort lawsuit may be brought against a "political subdivision" of the State,

---

3. The record does not disclose any answer by AFG or Ash to the complaint. Neither filed briefs in this interlocutory appeal. Accordingly, as used in this opinion "the defendants" refers to IPS and Gilbert.

4. *Martin v. Amoco Oil Co.*, 696 N.E.2d 383 (Ind. 1998) recently settled that a class certification

order is not automatically appealable as a final order unless the trial court makes the findings required by Trial Rule 54(B). An order granting or denying class certification may also be certified for immediate appeal pursuant to Appellate Rule 4(B)(6), as was done here, if it meets the requirements of the Rule.

the Tort Claims Act, IND.CODE § 34–13–3–1 to –25 (1998), requires that written notice of the claim be given to the subdivision's "governing body" within 180 days after the loss occurred.[5] *Id.* § 34–13–3–8(a). IPS is a "political subdivision" within the meaning of the Act and thus both IPS and Gilbert are covered by the Act's notice provisions. IND. CODE §§ 34–6–2–38(a) & –110(9) (1998). There appears to be no dispute that the notice in this case was filed within the 180–day period. By not conceding liability within ninety days of the filing, IPS effectively denied the claim and cleared the way for a lawsuit. IND.CODE §§ 34–13–3–11 & –13 (1998). This interlocutory appeal deals with the Act's notice provision:

> The notice required … must describe in a short and plain statement the facts on which the claim is based. The statement must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

*Id.* § 34–13–3–10. The basic issue is whether members of a prospective class in a class action must either satisfy the requirements of this section or expressly authorize a putative class representative to give notice on their behalf. If so, then this case cannot proceed as a class action and the trial court's rulings were correct.

In broad brush, the parties' contentions are as follows. The plaintiffs argue that their notice to IPS in January 1995 was sufficient to allow this case to go forward as a class claim on behalf of all affected IPS employees. They assert that conditional language in the statute—"the names of all persons involved if known"—contemplates a class action under these circumstances. In the alternative, the plaintiffs contend: (1) this class action is not barred because the notice informed IPS of all it reasonably need-

ed to know to investigate the claim and prepare for the possibility of litigation, thereby satisfying the purposes of the statute (commonly referred to as the "substantial compliance" doctrine); and (2) the defendants should be estopped from asserting non-compliance with the statute because IPS allegedly made various representations conceding liability or otherwise causing the potential class members to fail to file individual tort claim notices. We are also urged to declare the Tort Claims Act to be without effect in this case because it conflicts with the plaintiffs' claimed right under Trial Rule 23 to bring a class claim.

The defendants counter that Rule 23 does not exempt the plaintiffs or any other claimant from the statutory notice prerequisite. The defendants offer several arguments against judicial invalidation of the statute: (1) the Act is a precondition on the right to sue, not a procedural rule that must yield to Rule 23; and (2) there is no clash between the Act and the Rule because the notice requirement, unlike Rule 23, governs conduct before suit is filed. The defendants assert that each class member is a "person making the claim" as to whom specific damages and other information are required by the statute. Specifically, they maintain that the notice does not meet the requirements of the statute because it failed to state: (1) the names and number of potential class plaintiffs; (2) the extent, time, and place of the losses of each class member; and (3) the authority of three putative class representatives to submit a notice on behalf of unnamed members. Finally, the defendants dispute the contention that "substantial compliance" and "estoppel" save the notice in this case.

### A. *The plaintiffs' notice satisfied the Act*

▉ In our first line of inquiry—the language of the Act—we find no prohibition against class actions on behalf of a class including members who were not specifically identified in the tort claim notice. The statute requires that the notice set forth, among

**5.** The Act was recodified earlier this year. Pub.L. No. 1–1998, § 221, 1998 Ind. Acts 534 (repealing Indiana Code § 34–4 effective July 1, 1998); *Id.* § 8 at 53 (recodifying the Act at

Indiana Code §§ 34–13–3–1 to –25 effective July 1, 1998). This did not effect any substantive change in existing law. References in this opinion are to the newly minted statute.

other things, "the residence of the person making the claim at the time of the loss and at the time of filing the notice." IND.CODE § 34–13–3–10 (1998). "The person making the claim" and "the claim" are not defined. However, there is nothing in the Act to suggest that "the claim" cannot be a class action or that unknown class members must be identified by name. This statute permits the "persons making the claim" to be the named plaintiffs, and only their addresses are required. The absent class members may be "persons involved" but their identity is required only "if known." There is nothing in the statute to support the defendants' contention that the "persons involved" are only government officials. Indeed, they may be plaintiffs, defendants, third party witnesses, and others depending on the facts.[6]

The availability of a claim by a named plaintiff on behalf of a class is consistent with the language of the Act and also supported by provisions that do not appear. Unlike other statutes regulating suits against the government, the Act lacks any language indicating that each class member must file a notice. In this respect it differs from several provisions that explicitly preclude class actions unless each member of the class has met some condition. For example, Indiana Code § 6–8.1–9–7 (1993) provides that a class action for a refund of certain taxes "may not be maintained in any court, including the Indiana tax court, on behalf of any person" who did not file a refund claim before the class was certified.[7] In the absence of any such language, "the person making the claim" can be a putative class representative and "the claim" can be any claim properly asserted by that person, including a class action if it meets the requirements of Rule 23 and any other relevant considerations. Even assuming for sake of argument that the Act is semantically ambiguous on these points, settled rules of construction require that any ambiguities be resolved in favor of the claimant because the Act is in derogation of the right at common law to sue the government in tort. See, e.g., Polick v. Indiana Dep't of Highways, 668 N.E.2d 682, 685 (Ind.1996). Moreover, because there is no bar in the Tort Claims Act to a class action, the same considerations that led to Rule 23 as a general proposition are relevant here. One of the privileges our system of justice confers on every citizen is the ability to assert claims in the form of a class action if the requirements of Rule 23 are met. As a practical matter, this is often essential to the assertion of any claim at all. The cost and difficulty of pursuing only an individual claim may render it uneconomic from the point of view of any capable attorney, and financing such an enterprise on a pay as you go basis is often beyond the means of the aggrieved parties, in this case Mr. and Mrs. Budden and Ms. Muller. The class action device has a long and useful history in this State.[8] The con-

---

6. The handful of decisions that have dealt with this language have assumed "persons" in this context to apply to government employees, Allen v. Lake County Jail, 496 N.E.2d 412, 413–15 (Ind.Ct.App.1986) (opinion of Staton, P.J., with Garrard, J., concurring in result); a private party involved in an auto accident that gave rise to the claim, Scott v. Gatson, 492 N.E.2d 337, 341 (Ind. Ct.App.1986) (notice was not insufficient because, among other things, public entity failed to show that plaintiff knew and deliberately omitted private party's name); and even the plaintiff. Mills v. American Playground Device Co., 405 N.E.2d 621, 624 (Ind.Ct.App.1980) (notice was adequate as to "all persons involved" element where it listed the plaintiff, a third party defendant, and the prospective government defendant).

7. Similar preconditions are found in other tax refund statutes. See also IND.CODE § 6–1.1–15–15 (1993) (property tax assessments); IND.CODE § 6–

6–1.1–910 (1993) (gasoline tax); IND CODE § 6–6–2.5–69 (1993) (special fuel tax); IND.CODE § 6–6–4.1–7.1 (1993) (motor carrier fuel tax). These provisions, and others, certainly demonstrate that class claims are not personae non gratae in suits against the government. Cf. IND.CODE § 34–13–5–2 (1998) ("public lawsuits" challenging the wisdom of public improvements, irrespective of how they are captioned, are to be treated as class actions).

8. Before the Indiana Rules of Trial Procedure, including Rule 23, came into force in 1970, rules of pleading and procedure in this State were largely governed by statute. Indiana Revised Statutes of 1852 provided a mechanism for suing on behalf of a class: "[W]hen the question is one of a common or general interest of many persons, or where the parties are numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole." 2 IND.REV.STAT. pt. II, ch. 1, art. II,

struction of the Tort Claims Act that IPS urges would render it impossible in many if not most cases to assert a class claim against a political subdivision. Class members are usually unknown to each other. Identification of the class members by name often requires discovery of records that are available to the defendant but not the plaintiffs. This can be accomplished in most cases only after litigation is instituted and rarely within the six-month time frame required for a tort claim notice.

The defendants contend that if the statute is read to permit a class action, some class members will in effect be allowed to bypass the notice requirement. That may be correct, but the Act is intended to give the political subdivision notice, not to create barriers to claims. As other courts have observed, the class action "by its very nature circumvents the need for individual plaintiffs to file individual claims." *Zayas v. Gregg Appliances, Inc.*, 676 N.E.2d 365, 367 (Ind. Ct.App.1997), *trans. denied*, 683 N.E.2d 594 (Ind.1997) (table). *See generally* 1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS §§ 1.02–03 (3d ed. 1992) (discussing representative nature of class actions).

Finally, a notice of the type given here serves the basic purpose of the Act to inform the political subdivision of the claim it faces. The plaintiffs' notice outlined in a "short and plain statement" the circumstances, extent, time, and place of the loss; the names of the persons the plaintiffs knew to be involved;

the amount of damages sought; and the residence of the person (in this case three people) making the claim.[9] Because the statute required no more, we hold that the Act is no impediment to a class action here. To the extent *Alonso v. City of Hammond*, 648 N.E.2d 1221 (Ind.Ct.App.1995) is inconsistent with this opinion, it is disapproved.

## B. *The class action is consonant with legislative policy*

Other factors point to the same result. First, the legislature has explicitly approved Trial Rule 23 and the class action device. In 1969, the General Assembly, following the recommendations of a Civil Code Study Commission created in 1967, repealed a variety of antiquated trial procedural statutes and enacted "rules of civil procedure" that were modeled substantially on the Federal Rules of Civil Procedure. A virtual carbon copy of Federal Rule 23 was included. Act of March 13, 1969, ch. 191, § 1, 1969 Ind. Acts 564. These rules recognized that rules of civil procedure would ultimately be adopted by this Court. *Id.* § 2 at 715. ("[T]he General Assembly reaffirms the power given to the Supreme Court to adopt, amend and rescind rules of Court, including these rules of Court herein adopted"). Four months after the legislative rules were passed, this Court promulgated the Indiana Rules of Trial Procedure, including Rule 23 in its current form. The judicial rules were patterned, with some changes, on the work of the legislature and

§ 19 (1852). This section, which was intended to codify "the old equity rules on the subject of parties," *Tate v. Ohio & Mississippi R.R. Co.*, 10 Ind. 174, 175 (1858), survived multiple revisions of Indiana Statutes and was fleshed out in a number of decisions. *See, e.g., Kimes v. City of Gary*, 224 Ind. 294, 66 N.E.2d 888 (1946). Over one hundred years later it was still on the books and remained essentially unchanged. BURNS IND STAT. ANN. § 2–220 (1967). Indiana's class action statute was typical of the approach followed by many states and the federal courts before the advent of Rule 23 and modern class action practice. *See generally* FED.R.CIV.P. 23 advisory committee notes (1937 adoption) (discussing, inter alia, BURNS IND. STAT. ANN. § 2–220 (1967)).

9. The Act's mandate that notice be given in a "short and plain statement" unmistakably resembles the liberal notice pleading directive of the

Trial Rules. *Cf.* Ind. Trial Rule 8(A)(1) ("To state a claim for relief ... a pleading must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief...."); *Noblesville Redev. Comm'n v. Noblesville Assocs. Ltd. Partnership*, 674 N.E.2d 558, 563–64 (Ind. 1996) (discussing notice pleading). To the extent that is a factor, it further supports upholding the notice and rejecting the assertion of procedural default. Even if "short and plain statement" appears in the Act simply by coincidence, Indiana courts have historically followed something akin to a notice pleading approach when the sufficiency of the description of the claim is challenged. *Burggrabe v. Board of Public Works*, 469 N.E.2d 1233, 1235 (Ind.Ct.App.1984) ("liberally" construing notice requirement on this point); *accord City of Logansport v. Gammill*, 128 Ind.App. 53, 60, 145 N.E.2d 908, 911–12 (1957) (construing predecessor statute).

the Civil Code Study Commission.[10] The Trial Rules and their legislative counterpart went into effect on the same day (January 1, 1970). Accordingly, since their inception the Trial Rules have been the subject of both judicial and legislative blessing.

For almost fifteen years, a concurrent set of the Trial Rules could be found in the Indiana Code. *See, e.g.,* IND.CODE § 34-5-1-1 (1982). In a non-substantive change, the legislative analog was removed from the statute books in 1984. *See* Pub. L. No. 176-1984, § 2, 1984 Ind. Acts 1477. The following statute was adopted in its place: "The general assembly adopts, and incorporates into the Indiana Code, the Indiana rules of trial procedure: (1) as enacted by the general assembly in Acts 1969, c. 191, s. 1 and amended by P.L. 319-1975, SECTION 1; and (2) as accepted by the Indiana supreme court as being in effect on December 1, 1983." IND.CODE § 34-8-2-2 (1998). This "incorporate by reference" provision, taken together with other statutes, evinces a plain intent to retain the 1970 legislative version of the Trial Rules to the extent not in conflict with Rules promulgated by this Court.[11] The legislative analog to Rule 23 is a nearly verbatim copy of the judicial rule; as such, Rule 23 represents both judicial and legislative policy.[12]

Because Rule 23 enjoys this dual heritage, this case does not involve a clash between a procedural statute and a Rule of this Court. Rather, as other courts have concluded in construing the Trial Rules, the first level of resolution turns on whether the class action device and the Tort Claims Act may be reconciled. *Elliott v. Roach,* 409 N.E.2d 661, 668-69 (Ind.Ct.App.1980) (noting statutory origins of Trial Rule 21(B) and describing issue as whether particular statute and the Rule could both be given effect). Under settled rules of construction, our course is clear: "Where two statutes are in apparent conflict they should be construed, if it can be reasonably done, in a manner so as to bring them into harmony." *Quakenbush v. Lackey,* 622 N.E.2d 1284, 1290 (Ind.1993) (interpreting immunity provision of the Tort Claims Act) (citation omitted). For reasons already explained, permitting a tort claim notice on behalf of a class achieves this aim. The grant of partial summary judgment for the defendants must be reversed.[13]

---

**10.** This history is recounted in a number of decisions. *State v. Bridenhager,* 257 Ind. 699, 279 N.E.2d 794 (1972); *Indiana State Personnel Bd. v. Wilson,* 256 Ind. 674, 271 N.E.2d 448 (1971); *Collins v. Bair,* 252 N.E.2d 448, 456-57 & n. 3 (Ind.Ct.App.1969) (White, J., dissenting), *vacated on trans.,* 256 Ind. 230, 268 N.E.2d 95 (1971).

**11.** *See also* IND.CODE ANN. § 34-8-2-1 (West Supp. 1998) ("[T]he general assembly reaffirms the power given to the supreme court to adopt, amend, and rescind rules of court, including the rules of court adopted in this chapter, as set forth by IC 34-8-1-1"). Indiana Code § 34-8-1-3 in turn provides that "all laws in conflict with the supreme court's rules have no further force or effect."

**12.** The two versions differ in one respect. The judicial rule provides for a "hearing or waiver of hearing" on the motion for class certification, a point on which the legislative rule is silent. *Compare* Ind. Trial Rule 23(C)(1) *with* Act of March 13, 1969, ch. 191, § 1, 1969 Ind. Acts at 592. This distinction does not rise to the level of a "conflict" between the two that would require the legislative rule to yield to its judicial counterpart. *State v. Bridenhager,* 257 Ind. 699, 279 N.E.2d 794 (1972) (rules conflict if both could not apply in a given situation). Accordingly, the statutory version retains force and effect. *Neeley v. State,* 261 Ind. 434, 305 N.E.2d 434 (1974) (legislative rules on procedural matters do not require judicial preclearance and should be regarded as having "full force and effect" unless found to be inconsistent with "a specific existing rule of this Court").

**13.** Other jurisdictions have wrestled with application of notice statutes in the class action setting. Results and analytical approaches have varied. The Supreme Courts of Arizona and California have held that their respective statutes did not proscribe class actions against public entities. *Andrew S. Arena, Inc. v. Superior Court In and For the County of Maricopa,* 163 Ariz. 423, 788 P.2d 1174, 1176 (1990) ("We find nothing ... to suggest that the legislature intended to exempt public entities from either the burdens or the benefits of class actions in appropriate cases."); *City of San Jose v. Superior Court of Santa Clara County,* 12 Cal.3d 447, 115 Cal.Rptr. 797, 525 P.2d 701, 707 (1974) ("To require [each claimant to give notice] in advance of the complaint would severely restrict the maintenance of appropriate class actions—contrary to recognized policy favoring them.") (citations omitted) (superseded on other grounds by CAL. GOVT CODE § 905.1). On the other hand, some state courts have held that class plaintiffs who failed to comply individually with notice prerequisites forfeited their claims. *Markweise v. Peck Foods Corp.,* 205 Wis.2d 208, 556 N.W.2d 326, 329-30 (App.

## II. Description of the Class Claim

█ It was observed at oral argument in this Court that a class action under these circumstances—where "the person making the claim" asserts a class claim—raises the question of how vague the description of the claim can be and still satisfy the Act. If notice pleading in this respect were taken too far, the purpose of the statute would be defeated because the public entity or official could only hazard guesses as to its possible exposure or the nature of the claim. A categorical rule as to specificity is undesirable if not impossible; the adequacy of the notice will inevitably depend on the particular facts. The statute demands only

> the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

IND.CODE § 34–13–3–10 (1998). It requires only a "short and plain statement" of this information. The specific objections that the defendants raise are not fatal. They point out that the notice, by itself, did not permit IPS to quantify its exposure to the class with precision or even to identify the class members without resort to records in the hands of class members or AFG. This risk of unquantifiable damages is often presented in more conventional lawsuits where, for example, the dollar value of a personal injury claim is unknown and may vary over a wide range based on judgment and even on future events—such as whether the plaintiff survives or not. The plaintiffs here included their best guess of aggregate damages of $500,000. That is good enough. And, as already noted, the identity of the class members is not "known" at the time the notice is filed and therefore is not required.

## III. Compliance with Trial Rule 23

█ The parties next debate whether the plaintiffs have met the requirements of Trial Rule 23 for class certification (numerosity, commonality, typicality, and adequacy of representation, among other things). The trial court initially ruled that the plaintiffs had "complied" with Rule 23, but postponed a final ruling pending the outcome of the defendants' motion for partial summary judgment on the notice issue. The motion for class certification was eventually denied without findings, except for the suggestion that an appellate court "revisit" the "stringent notice requirements" of *Alonso*. In certifying its order for interlocutory appeal, the trial court also certified five questions for appellate review. The questions reflect the court's apparent conclusion that its hands were tied by *Alonso*. None of the questions involves application of Rule 23 as such to the facts of this case.[14] Thus the record is clear

1996) (following earlier Wisconsin decisions on the point), *review denied*, 207 Wis.2d 284, 560 N.W.2d 273 (1996) (table); *Eisner v. City of New York*, 118 Misc.2d 672, 461 N.Y.S.2d 216 (N.Y.Sup.Ct.1983) (construing statute requiring that the notice contain "the name and post-office address of each claimant"); *but see 423 So. Salina Street, Inc. v. City of Syracuse*, 68 N.Y.2d 474, 510 N.Y.S.2d 507, 503 N.E.2d 63, 73–74 (1986) (indicating that New York's notice statute might not apply to class actions in certain circumstances). The lower federal courts appear to agree that the Federal Tort Claims Act requires notice to be given by each claimant. Ethel R. Alston, Annotation, *When May Claims Against United States Under Federal Tort Claims Act (28 USCS §§ 2671–2680) Be Maintained As Class Action*, 48 A.L.R. FED. 860 (1980 & Supp.1997).

**14.** In a flurry of motions filed in the trial court soon after the order certifying the five questions was issued, the parties debated whether Indiana Appellate Rule 4(B)(6) allows certification of particular issues for interlocutory appeal, or certification only of "orders." The defendants argued for the more narrow reading and moved to strike the order certifying the five questions. The record discloses no ruling on that motion. An interlocutory appeal of an "order" may be taken under Rule 4(B)(6) if the trial court certifies at least one of the following: (1) "[t]he appellant will suffer substantial expense, damage or injury if the order is erroneous"; (2) "[t]he order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case"; or (3) "remedy by appeal after judgment is otherwise inadequate." Thus, as a technical matter, certification of the order, not the question, is proper. However, the second test—whether "[t]he order involves a substantial question of law"—permits the trial court to identify the particular issues justifying interlocutory appeal. If the trial court "certifies" a question, in lieu of the technically correct certification of an order, the net effect is simply to identify the issue that constitutes a

that the motion to certify the class was denied not based on any Rule 23 considerations but solely due to the statutory notice issue.

Because the Tort Claims Act is no impediment to a class action here, we vacate the order denying the motion for class certification. There are no findings on the substantive requirements of Rule 23. We remand for the trial court to consider what, if any, barriers to certification remain. *Hefty v. All Other Members of the Certified Settlement Class,* 680 N.E.2d 843, 850–51 (Ind.1997) (remanding for findings on whether class should be certified); *cf. Kuespert v. State,* 177 Ind. App. 142, 151, 378 N.E.2d 888, 894 (1978) (remanding due to lack of findings explaining decision to deny class certification).[15]

### Conclusion

The grant of the defendants' motion for partial summary judgment is reversed. The order denying the plaintiffs' motion for class certification is vacated. This case is remanded for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

"substantial question of law" presented by the order. Appellate courts in this State routinely answer particular questions certified for interlocutory appeal, even though there is no obligation to accept the issue as framed by the trial court or to answer it. *See, e.g., Consolidated Rail Corp. v. Lewellen,* 682 N.E.2d 779 (Ind.1997) (adopting Court of Appeals opinion restating and addressing an issue certified for interlocutory appeal); *Hale v. Kemp,* 579 N.E.2d 63 (Ind.1991) (declining to answer one of several questions posed). We affirm today what has been implicit in these and other decisions: although the trial court certifies an order, there is nothing to prohibit the trial court from identifying the specific questions

of law presented by the order for the appellate court's review. Indeed, it is often helpful if this occurs. Certification of a question, rather than the technically proper certification of an order, is inconsequential error as long as it is clear what order is affected. Any decisional law suggesting the contrary is disapproved.

15. The plaintiffs raise a handful of additional miscellaneous contentions—e.g., whether the trial court erred in striking particular evidence submitted by the plaintiffs in their opposition to summary judgment. Due to the resolution of the notice issue, these claims are mooted and we voice no opinion on them.