FILED

Aug 10 2020, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Matthew L. Hinkle
Carmel, Indiana

ATTORNEY FOR APPELLEE

Paul T. Belch
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shannon Murphy,

*Appellant-Plaintiff,*

v.

Indiana State University and
Nick D. Pledger,

*Appellee-Defendant.*

August 10, 2020

Court of Appeals Case No.
20A-CT-313

Appeal from the Vigo Superior
Court

The Honorable Lakshmi Reddy,
Judge

Trial Court Cause No.
84D02-1712-CT-8710

**Tavitas, Judge.**

## Case Summary

[1]     Shannon Murphy appeals the trial court's entry of summary judgment in favor
of Indiana State University ("ISU").[1]  We affirm.

---

[1] Nick Pledger, who was also named as a defendant in Murphy's lawsuit, was not involved in the summary judgment proceedings below.  Accordingly, we will address only the claims between Murphy and ISU.

## Issue

Murphy presents one issue for our review, which we revise and restate as whether the trial court erred by granting summary judgment in favor of ISU due to Murphy's failure to comply with the Indiana Tort Claims Act (the "Tort Claims Act").

## Facts

In early 2016, Murphy was a member of the ISU women's volleyball team. While a member of the team, Murphy used the team's locker room. Sometime before May 4, 2016, Nick Pledger, a student at ISU,[2] obtained access to the team's locker room, placed hidden cameras in various areas of the team's locker room, and recorded members of the team as they changed clothing. Pledger recorded Murphy and others on the volleyball team in various states of undress and distributed the videos on the internet.

ISU received an anonymous tip regarding the videos and began an investigation. ISU notified Murphy and Murphy's teammates on or about May 4, 2016, regarding the hidden camera and the distributed videos. On May 11,

---

[2] From the discovery obtained during the course of this action, it appears that Pledger's wife, formerly a member of the volleyball team, gave Pledger the code to access the locker room to obtain a teammate's jersey from the locker room and bring it to an away game. Pledger used the code again later to access the locker room and place the hidden cameras.

2016, the State of Indiana charged Pledger with twelve counts of voyeurism, Level 6 felonies, and eight counts of public voyeurism, Level 6 felonies.[3]

[5]     On July 11, 2016, Murphy's teammate, Stephanie Bindernagel, filed a notice of tort claim with ISU, the Indiana Political Subdivision Risk Management Commission, and the Attorney General regarding her claim for damages against ISU for negligent management of the locker room. In September 2016, Murphy filled out a notice of tort claim form that she obtained from the Indiana Attorney General's website. Murphy submitted her notice only to the Attorney General.[4] Murphy's notice also indicated that she had a claim against ISU for negligent management of the locker room.

[6]     On December 1, 2017, Murphy filed a complaint against ISU and Pledger, alleging, in part, that ISU was negligent in the management and security of the locker room, which allowed Pledger to access the locker room. In her

---

[3] Pledger pleaded guilty to two counts of voyeurism, Level 6 felonies, and two counts of public voyeurism, Level 6 felonies.

[4] In its brief, ISU asserts that Murphy was represented by an attorney when she filed the notice with the Attorney General. ISU does not provide a citation to the record to support this assertion; however, in Murphy's reply in support of her motion to correct error, Murphy indicated that an attorney worked on Murphy's behalf in June 2016, prior to Murphy's filing with the Attorney General. Nonetheless, Murphy's claim to the Attorney General does not indicate she is represented by an attorney.

At the hearing on ISU's motion to dismiss, the parties advised that the Attorney General's Office forwarded Murphy's claim to ISU in December 2017—over one year outside the 180-day requirement.

complaint, Murphy stated that she filed a notice of tort claim with the Attorney General.[5]

[7] On January 1, 2018, ISU filed a motion to dismiss, pursuant to Indiana Trial Rule 12(B)(6), alleging that ISU is a political subdivision and not a state agency; therefore, ISU alleged that Murphy did not provide ISU with the proper notice under the Tort Claims Act. Murphy continued with discovery, and on May 17, 2018, ISU filed a motion for protective order, pursuant to Indiana Trial Rule 26(C), seeking to excuse ISU's participation in discovery in light of its previously-filed motion to dismiss.

[8] After a hearing on the motion for the protective order, the trial court entered an order on September 17, 2018, granting in part and denying in part ISU's motion for protective order. The trial court allowed Murphy to proceed with limited discovery "for the sole purpose of being able to respond to Defendant's Motion to Dismiss for failure to comply with the Tort Claim Notice." *Id.* at 147. On June 4, 2019, ISU filed a second motion for protective order, seeking to prevent Murphy from deposing the ISU Police Department Chief, General Counsel, and Vice President. The trial court granted ISU's second motion for protective order.

---

[5] Murphy's complaint did not name the Indiana Attorney General as a party to her complaint; however, on December 13, 2017, the Attorney General's office filed a "notice of non-involvement of the Indiana Attorney General," stating that the complaint does not involve the State of Indiana or a State agency. Appellant's App. Vol. II p. 47.

[9]     On July 11, 2019, Murphy responded to ISU's motion to dismiss. Murphy attached several exhibits to her response, including: Bindernagel's notice of tort claim; Murphy's notice of tort claim, which was submitted to the Attorney General with the certified mail receipt; Murphy's complaint; a letter from Murphy's attorney to the Indiana Political Subdivision Risk Management Commission on December 21, 2017; a letter from ISU's attorney dated December 20, 2017 regarding Murphy's failure to file notice with ISU; and a January 26, 2018 letter from the Indiana Political Subdivision Risk Management Commission to Murphy's counsel noting that ISU is not a member of the Commission.

[10]    On October 29, 2019, the trial court entered an order that: (1) considered ISU's motion to dismiss as a motion for summary judgment in light of Murphy's exhibits; and (2) granted ISU's motion for summary judgment, concluding that Murphy did not substantially comply with the notice requirements of the Tort Claims Act. Murphy filed a motion to correct error and attached several documents to the motion.[6] On January 10, 2020, the trial court denied Murphy's motion to correct error.

---

[6] Some of the exhibits Murphy attached to her motion to correct error were not attached to her initial response to ISU's motion to dismiss. Accordingly, ISU argued the trial court should not consider exhibits that were not designated as part of the trial court's summary judgment decision. The trial court apparently considered the documents based on its statement in the January 2020 order that it considered all pleadings and exhibits.

# Analysis

[11] Murphy argues that the trial court erred by granting ISU's motion for summary judgment. ISU initially filed a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief could be granted. The trial court, however, treated the motion as a motion for summary judgment because evidence outside of the pleadings was considered. *See* Ind. Trial Rule 12(B) ("If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."). Accordingly, we will review Murphy's arguments pursuant to the summary judgment standard.[7]

[12] Summary judgment is appropriate only when the moving party shows there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018), *reh'g denied*; *see also* Ind. Trial Rule 56(C). Once that showing is made, the burden shifts to the nonmoving party to designate appropriate evidence to demonstrate the actual existence of a genuine issue of material fact. *Schoettmer v. Wright*, 992 N.E.2d 702, 705-06 (Ind. 2013). When ruling on the motion, the trial court construes

---

[7] The parties agree on the applicable standard of review and do not argue that the appropriate standard here is the motion to correct error standard. We would review a motion to correct error for an abuse of discretion. *See Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048, 1055 (Ind. 2003).

all evidence and resolves all doubts in favor of the non-moving party. *Id.* at 706. We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Id.* "We limit our review to the materials designated at the trial level." *Gunderson v. State, Indiana Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018), *cert. denied*, 139 S. Ct. 1167 (2019).

### A. Tort Claims Act's Notice Requirements

[13] ISU's motion for summary judgment concerned Murphy's failure to comply with the notice requirements of the Tort Claims Act. Our Courts have held that a liberal application of the requirements of the Tort Claims Act statute is proper in order to avoid denying plaintiffs an opportunity to bring a claim where the purpose of the statute has been satisfied. *Town of Knightstown v. Wainscott*, 70 N.E.3d 450, 455 (Ind. Ct. App. 2017), *trans. denied*. The notice requirement "'is intended to ensure that government entities have the opportunity to investigate the incident giving rise to the claim and prepare a defense.'" *Id.* (quoting *Schoettmer*, 992 N.E.2d at 706). "Like any statute in derogation of the common law, the [Tort Claims Act] 'must be strictly construed against limitations on the claimant's right to bring suit.'" *Id.* (quoting *Schoettmer*, 992 N.E.2d at 706). "So long as its essential purpose has been satisfied, the notice requirement 'should not function as a trap for the unwary.'" *Id.* (quoting *Schoettmer*, 992 N.E.2d at 706) (internal quotations omitted). "'The question of compliance is not a question of fact for the jury but ultimately a legal determination to be made by

the court.'" *Id.* (quoting *Indiana State Highway Comm'n v. Morris*, 528 N.E.2d 468, 471 (Ind. 1988)).

[14] The Tort Claims Act provides that a tort claim against a government entity is barred unless the claimant provides the entity with timely notice of the claim. *See* Ind. Code Chapter 34-13-3. The notice "must describe in a short and plain statement the facts on which the claim is based," including "the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice." Ind. Code § 34-13-3-10. The notice must be in writing and delivered in person or by registered or certified mail. I.C. § 34-13-3-12. The parties do not argue that Murphy's notice failed to contain the proper information; rather, the parties' arguments focus on Murphy's failure to notify the proper parties of her claim.

[15] The Tort Claims Act specifies which entity or entities a claimant must notify. The notice requirements are different for: (1) claims against the State and State agencies; and (2) claims against political subdivisions. The notice requirements for a claim against the State or a State entity are governed by Indiana Code Section 34-13-3-6(a), which provides that "a claim against the state is barred unless notice is filed with the attorney general or the state agency involved within two hundred seventy (270) days after the loss occurs." The Attorney General is required to "prescribe a claim form to be used to file a notice" under this section. I.C. § 34-13-3-6(b).

[16] On the other hand, the notice requirements for a claim against a political subdivision are governed by Indiana Code Section 34-13-3-8, which provides:

> Except as provided in section 9[8] of this chapter, a claim against a political subdivision is barred unless notice is filed with:
>
>> (1) the governing body of that political subdivision; and
>>
>> (2) the Indiana political subdivision risk management commission created under IC 27-1-29;
>
> within one hundred eighty (180) days after the loss occurs.
>
> (b) A claim against a political subdivision is not barred for failure to file notice with the Indiana political subdivision risk management commission created under IC 27-1-29-5 if the political subdivision was not a member of the political subdivision risk management fund established under IC 27-1-29-10 at the time the act or omission took place.

Indiana Code Section 34-6-2-110 defines the term "political subdivision" to include a "state educational institution." *See* I.C. § 34-6-2-110(7).

[17] Our Court has held that ISU is a political subdivision. *See VanValkenburg v. Warner,* 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992) ("There is no dispute in this case that Indiana State University is a political subdivision."), *trans. denied.* Pursuant to Indiana Code Section 34-13-3-8, Murphy was only required to give

---

[8] Indiana Code Section 34-13-3-9 is inapplicable here.

notice of her claim to ISU, and Murphy's claim was barred unless she provided timely notice of the claim.[9]  Murphy, however, did not provide notice to ISU as required by Indiana Code Section 34-13-3-8; rather, Murphy provided notice of her claim only to the Attorney General using a form found on the Attorney General's website, which was intended for tort claims against the State or a State agency.

### B. Substantial Compliance

[18]  Murphy contends that, despite her failure to provide timely notice to ISU, she fulfilled the Tort Claims Act's notice requirements under the theory of substantial compliance.  "Our [C]ourts have found that not all technical violations of [the Tort Claims Act] are fatal to a claim."  *Knightstown*, 70 N.E.3d at 456.  "Non-compliance has been excused in certain cases based on the theories of substantial compliance, waiver, and estoppel."  *Id.*  Substantial compliance is at issue here.

[19]  "Substantial compliance with the statutory notice requirements is sufficient when the purpose of the notice requirement is satisfied."  *Schoettmer*, 992 N.E.2d at 707.  The purpose of the Tort Claims Act's notice requirements is "to provide the political subdivision the opportunity to investigate the facts surrounding an accident so that it may determine its liability and prepare a

---

[9] Murphy was informed that ISU is not a member of the Indiana Political Subdivision Risk Management Commission.  Accordingly, Murphy was not required to give notice to the Indiana Political Subdivision Risk Management Commission.

defense." *Knightstown*, 70 N.E.3d at 456. In general, a notice that: (1) is filed within the 180-day period, (2) informs the governmental entity of the claimant's intent to make a claim, and (3) contains sufficient information which reasonably affords the governmental entity an opportunity to promptly investigate the claim, satisfies the purpose of the statute and will be held to substantially comply with the Tort Claims Act. *Id.* Where a plaintiff, within the 180-day period, "fails to file any notice of an intent to make a claim, actual knowledge of the occurrence on the part of the [governmental entity], even when coupled with an investigation of the occurrence, will not suffice to prove substantial compliance." *Id.* "'What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination.'" *Schoettmer*, 992 N.E.2d at 707 (quoting *Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989)).

[20] Murphy contends she substantially complied with the Tort Claims Act, because: (1) ISU investigated and was aware of the claims which were the subject of Murphy's suit; (2) Murphy filed a notice of tort claim with the Indiana Attorney General; and (3) Bindernagel's notice provided ISU with the relevant information regarding the claim. Accordingly, we will consider whether Murphy substantially complied with the Tort Claims Act's notice requirements.

### 1. ISU's Investigation

[21] Murphy first argues that she substantially complied with notice requirements because, although Murphy did not file notice with ISU, ISU was aware of the

incident, investigated the claims, and notified the victims regarding Pledger's actions. Our Supreme Court, however, has repeatedly held that "'mere actual knowledge of an occurrence, even when coupled with routine investigation, does not constitute substantial compliance.'" *Schoettmer*, 992 N.E.2d at 707 (quoting *Morris*, 528 N.E.2d at 470);[10] *see also Brown v. Alexander,* 876 N.E.2d 376, 384 (Ind. Ct. App. 2007) ("Our [C]ourts have consistently held that knowledge of claimant's injury, and even an opportunity to investigate, are insufficient to satisfy the requirement of notice."), *trans. denied*; *Fowler v. Brewer*, 773 N.E.2d 858, 865 (Ind. Ct. App. 2002) (holding "actual knowledge of the occurrence on the part of the political subdivision or an employee of the political subdivision does not satisfy the notice requirement of the [Tort Claims Act]"), *trans. denied.*

[22] Although ISU no doubt knew of the events leading up to Murphy's claim, ISU's initial investigation was focused on identifying Pledger and gathering information for Pledger's criminal case. The investigation into Pledger's actions, however, differs from the investigation ISU would undertake to

---

[10] In support of her argument, Murphy cites *City of Tipton v. Baxter*, 593 N.E.2d 1280 (Ind. Ct. App. 1992). In *Baxter*, our Court found substantial compliance with the Tort Claims Act, despite the Baxters' failure to provide written notice to the City, because "[t]he City's insurer, GIE, had actual knowledge of the accident several days after it happened, conducted an investigation, and indicated a willingness to settle with the Baxters." *Baxter*, 593 N.E.2d at 1283. First, we conclude that *Baxter* is distinguishable from Murphy's case because there is no indication in the record that Murphy had any communication with ISU's insurer. Moreover, in *Schoettmer*, 992 N.E.2d at 707-08, our Supreme Court disagreed with *Baxter* and "decline[d] to find substantial compliance where, . . . the claimant communicated only with the insurer and took no steps whatsoever to comply with the notice statute." *Schoettmer*, 992 N.E.2d at 708. Given the holding of *Schoettmer*, we find *Baxter* unpersuasive.

determine a defense to a negligence allegation. Given our Supreme Court's decision in *Schoettmer*, we cannot conclude that ISU's knowledge of the incident and investigation into Pledger's criminal actions amounted to substantial compliance that was sufficient to satisfy the requirement of notice. Accordingly, we cannot find that Murphy substantially complied with the Tort Claims Act on this basis.

### 2. *Written Notice to the Indiana Attorney General*

[23] Next, Murphy argues that she substantially complied with the Tort Claims Act's notice requirement by sending her notice to the Attorney General. In support of her argument, Murphy cites *Galbreath v. City of Indianapolis*, 253 Ind. 472, 255 N.E.2d 225 (Ind. 1970), where our Supreme Court found substantial compliance when a notice of tort claim was sent to the City Legal Department, instead of the Mayor. Our Supreme Court held that the "City Legal Department may properly be viewed as the agent of the mayor for certain purposes, one of which is to receive the notice under the notice statute of suits to be brought against the city." *Galbreath*, 253 Ind. at 479, 255 N.E.2d at 229. The Court explained that the "purpose of the notice statute being to advise the city of the accident so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary where such purpose has in fact been satisfied." *Id.* at 479-80, 255 N.E.2d at 229.

[24] We agree with ISU that Murphy's situation is distinguishable from *Galbreath*. The designated evidence does not demonstrate an agency relationship between

ISU and the Attorney General similar to the connection between the city's mayor and the city's legal department in *Galbreath*. There is no evidence that ISU or an agent of ISU had any indication of Murphy's intent to file a notice of tort claim within the 180-day statutory window.

[25] Murphy also argues that she fell into a "trap for the unwary" because the Attorney General provided a notice of tort claim form on its website. *See id.* at 479-80, 255 N.E.2d at 229. The Attorney General's website includes the form because, when a State agency is involved, the Attorney General must receive notice and is required by statute to "prescribe a claim form to be used to file a notice." *See* I.C. § 34-13-3-6. The notice of tort claim used by Murphy also indicated that, if the claimant had any questions regarding how to submit the form, the claimant should contact an attorney. We cannot say that the Attorney General, by complying with its statutory requirements, created a trap for the unwary.

[26] Finally, Murphy also argues that she fell into a trap for the unwary because the Attorney General failed to notify her that she sent the notice of tort claim to the wrong entity. In support of this argument, Murphy relies on *Schoettmer,* 992 N.E.2d at 709-10, in which Schoettmer was injured in a motor vehicle accident with an employee of the South Central Community Action Program ("South Central"). Unaware that the South Central was a governmental entity, Schoettmer communicated for months with South Central's insurance company. When they were unable to reach a settlement, Schoettmer brought an action against South Central. South Central filed a motion for summary

judgment because Schoettmer failed to provide timely notice of his tort claim pursuant to the Tort Claims Act, and the trial court granted the motion.

[27] On appeal, Schoettmer argued, in part, that the doctrine of equitable estoppel precluded South Central's argument. Our Supreme Court noted that "[t]he party claiming equitable estoppel must show its '(1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially.'" *Schoettmer*, 992 N.E.2d at 709 (quoting *Story Bed & Breakfast LLP v. Brown Cnty. Area Plan Comm'n*, 819 N.E.2d 55, 67 (Ind. 2004)). Equitable estoppel will not apply against the State unless there is "clear evidence that its agents made representations upon which the party asserting estoppel relied." *Id.* The burden to produce that evidence rests upon the party claiming estoppel. *Id.* The Court concluded, in part, that a genuine issue of material fact existed regarding whether Schoettmer "failed to act because of his reliance on the [insurer's] representations." *Id.*

[28] Here, Murphy does not argue on appeal that the doctrine of equitable estoppel applies. Moreover, the Attorney General's office did not notify Murphy one way or another that her notice was incorrect. There is no evidence that Murphy failed to act because of reliance on a representation of the Attorney General. We are not persuaded by Murphy's argument that she fell into a trap for the unwary based upon the Attorney General's failure to inform her that her notice was misdirected.

[29] There is no designated evidence that the Attorney General was an agent of ISU or that Murphy fell into a trap for the unwary because the Attorney General maintains a tort claim form on its website or because the Attorney General failed to inform Murphy that her notice was sent to the wrong entity. We cannot find substantial compliance with the Tort Claims Act based upon Murphy's arguments regarding the Attorney General. *See, e.g., id.* at 708-09 (holding that the governmental entity's insurance carrier was not the governmental entity's "agent for the purpose of receiving tort claim notices").

### 3. *Bindernagel's Notice*

[30] Murphy also argues that Bindernagel's notice of tort claim provided ISU with sufficient notice that should allow Murphy's claim to go forward. Bindernagel sent her notice of tort claim to the following: the Indiana Political Subdivision Risk Management Commission; the Attorney General; ISU's general counsel; the president of ISU; and the ISU Board of Trustees. Murphy concedes that Bindernagel's notice was not sent on behalf of Murphy; however, Murphy argues that, because Bindernagel's notice disclosed that Pledger videotaped Bindernagel and "other members" of the ISU volleyball team, ISU had knowledge that others on the team may bring claims. Appellant's Br. p. 23.

[31] In support of her argument, Murphy relied on *Budden v. Board of School Com'rs of City of Indianapolis,* 698 N.E.2d 1157, 1162-63 (Ind. 1998). In *Budden,* AFG, a retirement plan administrator for the IPS school corporation, embezzled funds from hundreds of teachers. The attorney for three teachers sent a letter to the school corporation that stated: "This is to advise you that our office has been

retained by the plaintiffs and potentially all teachers who had [retirement] funds embezzled by AFG to represent their interests in any claims they may have against IPS and AFG." *Budden*, 698 N.E.2d at 1159 (internal citations omitted). The plaintiffs filed an action against the school corporation and sought to certify the case as a class action. The school corporation argued that the notice of tort claim was insufficient under the Tort Claims Act except for the three teachers represented by the attorney at the time of the notice of tort claim. The trial court denied the motion for class certification and allowed the case to go forward only as to the three teachers.

[32] Our Supreme Court addressed whether "notice by a putative class representative that fairly signals an intent to assert a class claim, but does not list all potential plaintiffs, compl[ies] with the notice requirement to preserve claims of class members . . . ." *Id.* at 1158. The Court held that there was "no prohibition against class actions on behalf of a class including members who were not specifically identified in the tort claim notice." *Id.* at 1161. The Court rejected the defendants' argument that some members of the class would be able to bypass the notice requirement through a class action, stating that while that "may be correct, [ ] the [Tort Claims] Act is intended to give the political subdivision notice, not to create barriers to claims." *Id.* at 1163. Importantly, the Court observed that "the class action by its very nature circumvents the need for individual plaintiffs to file individual claims." *Id.* (citations and quotations omitted).

[33] We do not find *Budden* applicable here.[11] The notice of tort claim in *Budden* advised that the attorney had been retained by three teachers "and potentially all teachers" to bring an action against the school corporation. *Id.* at 1159. The three teachers then sought to have a class action certified. Here, although Bindernagel's notice mentioned that Pledger videotaped Bindernagel "and other members of the [ISU] Women's Volleyball Team", *see* Appellant's App. Vol. II p. 181, the notice did not in any way indicate that other members of the women's volleyball team would similarly file suit or that the attorney was seeking to represent other members of the team or certify a class. Bindernagel's notice did not notify ISU of claims or potential claims on behalf of the entire volleyball team.

[34] ISU argues that Bindernagel's notice of tort claim is insufficient to provide notice of Murphy's claim. In support of its argument, ISU relies on *Rosga v. City of Hammond,* 493 N.E.2d 787 (Ind. Ct. App. 1985), *reh'g denied, trans. denied.*

---

[11] Murphy also relies on *Indiana State Highway Commission v. Morris*, 528 N.E.2d 468 (Ind. 1988), in support of her argument that Bindernagel's notice of tort claim provided ISU with sufficient notice of Murphy's claim. In *Morris*, the claimant served the notice of tort claim to the State Highway Commission but neglected to serve notice to the Attorney General, as required by the Tort Claims Act. The Commission, however, forwarded the notice to the Attorney General's office in accordance with their policies. Ultimately, after plaintiffs filed suit, the Commission challenged Morris' compliance with the notice requirement of the Tort Claims Act. Our Supreme Court found substantial compliance, concluding that, while the Tort Claims Act indicates that notice must be filed with certain entities, it "does not designate who must file the notice." *Morris*, 528 N.E.2d at 470 (emphasis applied). Accordingly, the Commission's timely forwarding of the notice to the Attorney General was sufficient to establish the plaintiff complied with the notice requirement of the Tort Claims Act.

Based on *Morris*, Murphy argues that, because Bindernagel sent notice of her claim to ISU, Murphy's lack of notice to ISU is not fatal. The point of *Morris*, however, was that both the Commission and the Attorney General ultimately received timely notice of Morris's claim. Here, although ISU had timely notice of Bindernagel's claim, ISU never received timely notice of Murphy's claim, which is the purpose of the notice requirement. Accordingly, we do not find *Morris* applicable here.

Rosga was injured and her husband was killed in a collision. Although Rosga failed to provide a notice of tort claim to the City regarding her claims, the City was provided with a notice of tort claim from the estates of three other people killed in the crash.

> The caption of this notice recited that it concerned the property damage and personal injury claims of those three, "and all persons similarly situated, injured or killed" in the accident. The body of the notice mentioned Mrs. Rosga and her husband by name and that she had been injured and he had been killed. It did not, however, otherwise purport to advance a claim on behalf of Mr. or Mrs. Rosga.

*Rosga*, 493 N.E.2d at 788. The trial court granted summary judgment to the City on Rosga's claim because of her failure to provide a notice of tort claim.

[35] On appeal, we concluded that there was no authority "permitting a party to rely upon the notice of claim given by some other party for that party's claim arising out of the same occurrence. Nor do we believe such reliance should be permitted. The city is entitled to know that the party is making a claim." *Id.* at 789. We affirmed and held that "no notice was given by, or on behalf of, the claimant by any authorized representative, and that such notice was necessary to enable the claimant to maintain the action." *Id.*

[36] ISU also relies on *Putnam County v. Caldwell,* 505 N.E.2d 85 (Ind. Ct. App. 1985), *reh'g denied*, which reached a result similar to that in *Rosga*. Jon Caldwell ("Jon") was injured while riding in a motor vehicle owned by the county and driven by a county employee. After his injuries, Jon filed his notice of tort

claim, but Jon made no mention of his wife, Jerri Caldwell ("Jerri"), or a potential claim for loss of consortium. Subsequently, Jerri filed a claim for loss of consortium against the county. The county filed for summary judgment on Jerri's claim, contending that notice of the tort claim was not properly given, but the trial court denied the motion. Our Court found the trial court should have granted summary judgment in favor of the county as to Jerri's claim because the "names and number of claimants are essential" and, "until the complaint was filed, the Public Body would not know that Jerri existed, or if it did, that she contemplated filing a claim. Knowledge that the accident occurred is not sufficient." *Caldwell*, 505 N.E.2d at 87.

[37] We agree with ISU and find Murphy's case is analogous to *Rosga* and *Caldwell.* We acknowledge that, unlike *Caldwell,* ISU knew of Murphy's existence, even if Bindernagel's notice of tort claim did not disclose Murphy by name. *Rosga* and *Caldwell* demonstrate, however, that Murphy cannot rely on Bindernagel's notice of tort claim, which does not disclose that Murphy intended to bring a claim. Even in *Rosga,* when the other potential parties were disclosed by name, our Court declined to find substantial compliance. Accordingly, we cannot find that Bindernagel's notice of tort claim warrants a finding that Murphy substantially complied with the notice requirement of the Tort Claims Act.

### C. Summary

[38] Even considering together: (1) Bindernagel's proper notice of tort claim; (2) Murphy's notice to the Attorney General; and (3) ISU's investigation, we cannot find that Murphy substantially complied with the notice requirements of

the Tort Claims Act. Murphy's notice to the Attorney General simply did not satisfy the purpose of the notice requirement. The notice to the Attorney General did not inform ISU of Murphy's intent to take legal action so that ISU could determine its liability and prepare a defense as to Murphy. Although ISU was aware of the locker room incident and of Bindernagel's notice of tort claim, ISU was not provided with timely notice of *Murphy's* negligence claim against ISU. Accordingly, ISU demonstrated that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law because Murphy's claim was "barred" for failure to provide a proper notice of tort claim under Indiana Code Section 34-13-3-8.

[39] The General Assembly has specifically articulated the notice of tort claim requirements, and, our Supreme Court and this Court have clearly expressed the purpose of such requirements. Murphy's notice, which was provided to the wrong entity, did not satisfy the purpose of the notice requirements. Although the facts of this case are appalling and no doubt continue to substantially impact Murphy, the notice requirements of Indiana Code Section 34-13-3-8 and the cases interpreting the Tort Claims Act require us to conclude the trial court properly granted ISU's motion for summary judgment based on the record before us.[12]

---

[12] Murphy also argues that, as an alternative to reversal, we should consider remanding the case to the trial court for additional discovery and an evidentiary hearing to determine whether Murphy substantially complied with the Tort Claims Act's notice requirements. We decline Murphy's invitation to remand for an

## Conclusion

The trial court properly granted ISU's motion for summary judgment. We affirm.

Affirmed.

Riley, J., and Mathias, J., concur.

---

evidentiary hearing to further develop facts regarding Murphy's potential compliance with the Tort Claims Act. Murphy contends in her reply brief that we should remand for an evidentiary hearing to allow her to conduct depositions of other university officials to discover whether the Attorney General's office ever timely forwarded the notice to ISU. Murphy cannot create a genuine issue of material fact by merely speculating a fact may exist. *See Beatty v. LaFountaine,* 896 N.E.2d 16, 20 (Ind. Ct. App. 2008) (concluding "mere speculation cannot create questions of fact. . . . Opinions expressing mere possibility with regard to a hypothetical situation are insufficient to establish a genuine issue of material fact") (citations omitted), *trans. denied.*